Ronald E. Gillette  (#4998)
Gillette Law PLLC
8912 Spanish Ridge Avenue, Ste. 200
Las Vegas, Nevada 89148
702-570-7216
Fax:  702-586-3527
*Attorneys for Plaintiff*
*Gypsum Resources, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GYPSUM RESOURCES, LLC, a Nevada limited liability company | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES; PETITION FOR WRIT OF MANDAMUS, AND JUDICIAL REVIEW** |
| vs. | |
| CLARK COUNTY, a political subdivision of the State of Nevada; CLARK COUNTY BOARD OF COMMISSIONERS; and DOES I-XX, | **JURY DEMANDED** |
| Defendants. | |

COMES NOW Plaintiff GYPSUM RESOURCES, LLC ("Gypsum"), by and through counsel RONALD E. GILLETTE, ESQ., and hereby complains against Defendants CLARK COUNTY, a political subdivision of the State of Nevada, CLARK COUNTY BOARD OF COMMISSIONERS, and DOES I-XX, and complaints and petitions this Court as follows:

## I.

## PARTIES AND JURISDICTION

Plaintiff GYPSUM RESOURCES, LLC, is a Nevada limited liability company licensed under the laws of the State of Nevada and is the owner of approximately 2,400 acres of real property encompassing Blue Diamond Hill and the Hardie Gypsum Mine located in Clark County, Nevada (the "Gypsum Property").

1.      Plaintiff is informed and believes and thereupon alleges that Defendant CLARK COUNTY ("Clark County), is a political subdivision of the State of Nevada.

/ / /

2.     Plaintiff is informed and believes and thereupon alleges that Defendant CLARK COUNTY BOARD OF COMMISSIONERS ("Board") is the governing board authorized to conduct business, adopt laws, and adjudicate land use matters, on behalf of the County.

3.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein designated as DOES I through X inclusive are unknown to the Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of said Defendants is responsible in some manner for the events and happenings and proximately caused the injuries and damages herein alleged.  Plaintiff will seek leave to amend this Complaint to allege their true names and capacities as they are ascertained.

4.     Jurisdiction is proper under 28 U.S.C. § 1331 because various claims in this action arise under the Constitution of the United States, specifically the Equal Protection Clause of the Fourteenth Amendment, and under 42 U.S.C.  § 1983.  This Court has supplemental jurisdiction over the state-law-based claims under 28 U.S.C. § 1367 as such claims are so related to the claims within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## II.

## GENERAL FACTUAL ALLEGATIONS

**A.   Red Rock Canyon National Conservancy Area Established.**

5.     In 1990, Congress established the Red Rock Canyon National Conservation Area ("RRCNCA"), designating nearly 200,000 acres of land as a conservation area to be administered by the Bureau of Land Management. 16 U.S.C. § 460ccc-1. Congress specifically noted that it did not "intend for the establishment of the [RRCNCA] to lead to the creation of protective perimeters or buffer zones around" RRCNCA, and that its establishment of the RRCNCA did not automatically preclude surrounding lands from the same activities prohibited within the RRCNCA. 16 U.S.C. § 460ccc-9.

6.     In 1993, the Nevada Legislature enacted the Red Rock Canyon Conservation Area and Adjacent Lands act, restricting land use for the RRCNCA.

7.     Plaintiff is informed and believes and thereupon alleges that in 2001, Clark County established the Red Rock Design Overlay District, encompassing land surrounding the RRCNCA. The purpose of the Red Rock Design Overlay District is to "minimize the visual impact of development within the area, to maintain the rural character and cultural heritage of the community, preserve wildlife habitat, and minimize the impacts of additional traffic." Chapter 30.48, Section 30.48.280, Clark County Code. In pertinent part, the Red Rock Design Overlay District places significant restrictions on how land within the district may be used and/or developed.

**B.     Gypsum Resources, LLC Acquires 2400 +/- Acre Hardie Gypsum Property.**

8.     In 2003, Plaintiff purchased the 2400 +/- acre Gypsum Property for purposes of developing the property as a master-planned residential community.  Gypsum principal, James M. Rhodes, has extensive experience and has had success in the design and development of master-planned residential developments.

9.     Upon information and belief, when Plaintiff purchased the Gypsum Property, none of the property fell within the boundaries of either the RRCNCA or the Red Rock Design Overlay District.

10.    When Plaintiff purchased the Gypsum Property, the land was zoned "RU", thus generally permitting one home on every two acres.  Accordingly, Plaintiff intended to submit a Major Project Application seeking a zoning variance and other necessary approvals so that it could develop the Gypsum Property into a master-planned residential community with development and design standards that emphasize environmental compatibility and a high qualify community.

11.    Upon information and belief, when Plaintiff purchased the Gypsum Property, the "R U" zoning code was considered as a sort of "holding zone" in Clark County, as Defendants had frequently approved the applications of other homebuilders to develop multiple residential dwelling units on land which had been previously designated as "R U".

12.    Upon information and belief, the Gypsum Property's prior owner, the James Hardie Gypsum Company, was required to reclaim the lands which had been disturbed by

3

1   mining activities, pursuant to an agreement with the Bureau of Land Management ("BLM").

2   Upon information and belief, Plaintiff assumed certain reclamation responsibility when it

3   acquired the property.

4         13.    Plaintiff has continued mining operations at the Hardie Gypsum Mine since its

5   purchase of the Gypsum Property.

6         14.    Upon information and belief, on or about May 6, 2003, Defendant Clark County

7   publicly announced its intention to purchase the Gypsum Property for purposes of restoring

8   the land and transferring the land to BLM to be incorporated into the RRCNCA.

9         15.    On or about May 19, 2003, the Nevada Legislature approved SB 386, a bill

10   which precluded Plaintiff from seeking a zoning variance from Clark County to develop the

11   Gypsum Property as a master-planned residential community as Plaintiff originally intended.

12   SB 386 was signed into law by Governor Kenny Guinn on or about May 19, 2003.

13         16.    On or about May 21, 2003, Defendant Clark County adopted Clark County

14   Ordinance 2914, which expanded the Red Rock Design Overlay District to prohibit land use

15   applications to increase the zoning density for properties within the district. This expansion

16   added Plaintiff's Gypsum Property to the Red Rock Design Overlay District and effectively

17   deprived Plaintiff of its investment backed expectation to develop the Gypsum Property as

18   Plaintiff originally intended.

19         17.    Upon information and belief, the purpose behind SB 386 and Clark County

20   Ordinance 2914 was to drive down the fair market price of the Gypsum Property so that

21   Defendants could pressure Plaintiff to sell and/or exchange the Gypsum Property   to

22   Defendant for a low price.

23   **C.    Gypsum Resources Files Suit Against Clark County and the State of Nevada.**

24         18.    On or about May 10, 2005, Plaintiff filed suit in Nevada federal court,

25   challenging the constitutionality of SB 386 and the Board's expansion of the Red Rock

26   Design Overlay District in an action entitled *Gypsum Resources, LLC vs. Masto, et al.*, Case

27   No. CV-S-05-0583-RCJ-LRL (the "Federal Lawsuit").

28   ///

19.     On or about May 18, 2005, Plaintiff filed a parallel action in the First Judicial District Court of the State of Nevada entitled *Gypsum Resources, LLC vs. State of Nevada*, Case No. 05-00614A (the "State Lawsuit") which was substantially similar to the Federal Lawsuit claims challenging SB 386.

20.     After extensive litigation and associated delays, in November 2009, the federal district court found that SB 386 violated the Nevada Constitution, granting partial summary judgment in Plaintiff's favor. The State of Nevada appealed the decision to the Ninth Circuit Court of Appeals, who then certified questions to the Nevada Supreme Court regarding the constitutionality of SB 386.  Thereafter in 2003, the Nevada Supreme Court agreed with the federal district court, holding that SB 358 violated the Nevada Constitution.

**D.     Clark County and Gypsum Settle the Federal Lawsuit.**

21.     In approximately April 2010, after Clark County effectively froze Gypsum's development efforts for the past seven (7) years and considering the risks associated with continued litigation, and the negative consequences of continued delay, Plaintiff entered into a written Stipulation and Settlement Agreement Pursuant to Court Ordered Settlement Conference (the "Settlement Agreement") with Clark County in order to resolve both the state and federal lawsuits.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1.

22.     The Settlement Agreement required, *inter alia*,  Defendants to amend the Clark County Code to allow an exception (the "Red Rock Design Overlay District Exception") to the Red Rock Design Overlay District, removing certain portions of Plaintiff's Gypsum Property land from the Red Rock Design Overlay District.

23.     The Settlement Agreement authorized Plaintiff's submittal of a Major Project Application for a master-planned residential development pursuant to Chapter 30.20 of the Clark County Code to Defendant Clark County to develop the Gypsum Property as a Major Project master-planned residential community.

/ / /

24.     The Settlement Agreement further required Clark County to allow for the

submittal by Plaintiff of an application to the Board of County Commissioners pursuant to Chapter 30.20 of the Clark County Code, and the Board to review, process and adjudicate Plaintiff's Major Project Application "in good faith."  Specifically, the Settlement Agreement provides in relevant part:

> 5.    The Major Project Application.
>
> The Parties acknowledge that, after the Adoption of the Amending Ordinance and the approval of this Agreement, Gypsum intends to submit a Major Project application for the development of a master planned community pursuant to Chapter 30.20 of the Clark County Code, and subject to all generally applicable and currently adopted codes (the "Major Project Application").  The County and Gypsum acknowledge that the Major Project Application may include adjustments, considerations and deviations to take into account the previous mining activities on the Property.  The County agrees that it will process the Major Project Application under the Major Projects process in good faith.  Gypsum understands that the County, by this Agreement, cannot and is not committing to approval of any particular Major Project and/or any particular densities or uses.

*See*, Exhibit 1.

25.    On April 21, 2010, the Board approved the Red Rock Design Overlay District Exception, and Chapter 30.48 of the Clark County Code was amended to allow Plaintiff to proceed with its Major Project Application.

26.    The Settlement Agreement further required Plaintiff within five days of the passage of the Red Rock Design Overlay District Exception, to dismiss both the state and federal lawsuits against Defendants. Accordingly, and as required in the Settlement Agreement and with the understanding and belief that Clark County would comply with the Settlement Agreement, Plaintiff dismissed both the State Court Lawsuit and Federal Lawsuit on May of 2010.

**E.    Gypsum Submits its Major Project Application.**

27.    In or about June 2011, and in furtherance of the Settlement Agreement, Plaintiff submitted an application to Clark County proposing to develop a community on the Gypsum Property which included 7,269 residential dwelling units (the "2011 Concept Plan").

/ / /

/ / /

6

28.     On or about August 17, 2011, the Clark County Board approved the 2011 Concept Plan subject to multiple conditions. One of the conditions of approval reduced the potential residential dwelling units to 5,026. Another key condition of approval was a prohibition on primary access to the new development via State Route 159.

29.     On or about September 29, 2011, Plaintiff timely submitted its Reclamation Specific Plan ("Specific Plan") and Public Facilities Needs Assessment ("PFNA") to Clark County  thereby completing its next step submittals in Clark County's Major Projects review process.

30.     Thereafter, Plaintiff's Major Projects review process was placed "on hold" by Clark County while a potential land exchange for the Gypsum Property with the BLM was contemplated and pursued.

31.     In approximately October 2014, negotiations with the BLM ceased, and no land exchange occurred.  The BLM land exchange proposal was denied in or around February of 2015.

32.     Unbeknownst to Plaintiff, during the time the Parties were pursuing a potential land exchange with BLM, Defendant Clark County allegedly misplaced Plaintiff's paper file containing its September 2011 Specific Plan and PFNA applications and corresponding proof of payment of the required fees for the Clark County administrative applications.

33.     Upon information and belief, Defendants also failed to enter all of the assessor parcel numbers for Plaintiffs' 2011 Specific Plan and PFNA applications into the County's computer system.

34.     As a result of Defendants misplacing Plaintiff's paper file and Defendants' failure to input all assessor parcel numbers into the County's computer system, Defendant Clark County asserted that Plaintiff had not timely submitted its 2011 Specific Plan and PFNA applications, or paid the required fees for the 2011 Concept Plan to move forward..

35.     In or about July 2016, after Clark County advised Gypsum representatives a new Major Project Concept Plan would necessarily need to be filed, Plaintiff submitted a second proposal to develop the Gypsum Property (the "2016 Concept Plan") which

incorporated the reduced residential density and all of the specific conditions for approval from the 2011 Concept Plan.

36.     On or about December 9, 2016, in an effort by Clark County and certain of its commissioners to avoid political fall-out with a vote on the proposed Gypsum development plan, Defendant Clark County filed a Complaint in Eighth Judicial District Court of the State of Nevada ("Save Red Rock Lawsuit") against Plaintiff and Save Red Rock ("SRR"), a non-profit group which has been actively opposing Plaintiff's efforts to develop the Gypsum Property for several years.   This County strategy to avoid processing and voting on Gypsum's Major Project Application was ill conceived, and caused additional delay, hardship, legal fees, and damages to Plaintiff and its development of the Gypsum Property.

37.     In the Save Red Rock Lawsuit, Clark County sued both Gypsum Resources and Save Red Rock and sought a Court declaration that its approval of Plaintiff's 2011 Concept Plan had not expired because Plaintiff submitted its 2011 Specific Plan and PFNA within 1 year of receiving conditional approval of its 2011 Concept Plan.   This Clark County move was designed to have a Court ordered decision on the 2011 Concept Plan, so then acting County Commissioner Brager would not have to vote on Gypsum 's 2016 Concept Plan. Such actions by former County Commissioner Brager and Clark County was done in bad faith and in further violation of the Settlement Agreement.   Clark County's Save Red Rock Lawsuit further delayed Plaintiff's efforts to develop the Gypsum Property.

38.     In the Save Red Rock Lawsuit, the Save Red Rock Coalition ("SRR") asserted counterclaims against Clark County and Plaintiff, as well as asserting a cross-claim against Plaintiff. SRR sought a Court declaration that Plaintiff's 2011 Concept Plan had expired and also sought to enjoin Plaintiff from accessing Highway 159 because Defendants' approval of the 2011 Concept Plan expressly denied Plaintiff of the right to utilize Highway 159 for primary access to its land.   Extensive discovery and motion practice took place in the Save Red Rock Lawsuit.    Attorney Justin Jones, now newly elected County Commissioner represented SRR in the Save Red Rock Litigation.

///

39.     The agendas for Defendant the Board's Zoning Commission Meetings for December 7, 2016, February 8, 2017, and February 22, 2017, stated that Plaintiff's 2011 Concept Plan had expired, noting that the 2016 Concept Plan incorporated the conditions placed on the 2011 Concept Plan.   The uncertainties of Clark County's inconsistent and changing positions related to the Concept Plans likewise caused delays and damages to Plaintiff.

40.     At the December 7, 2016, and February 8, 2017, Zoning Commission Meetings, the Board voted to again further delay consideration of Plaintiff's 2016 Concept Plan until future meeting dates.  These delays caused further damage to Plaintiff.

41.     Upon information and belief, in February 2017, Clark County employee Joel McCullouch located Plaintiff's paper Major Project file which included evidence that Plaintiff had timely submitted its 2011 Specific Plan and PFNA, land use application, and paid required fees in September 2011.

42.     At the February 22, 2017, Zoning Commission Meeting, District Attorney Robert Warhola, advised that it was now Defendant Clark County's position that Plaintiff's 2011 Concept Plan had not expired, and that Clark County believed the 2011 Concept Plan was still in effect.

43.     At the February 22, 2017, Zoning Commission Meeting, Defendants asked Plaintiff to withdraw the 2016 Concept Plan, without prejudice, in order to avoid a motion to deny the 2016 Concept Plan. Plaintiff agreed to withdraw the 2016 Concept Plan without prejudice with the understanding and reliance upon Clark County's commitment to timely process Plaintiffs' 2011 Concept Plan in "good faith" as required in the Settlement Agreement.  The Board then voted to approve Plaintiff's withdrawal without prejudice of the 2016 Concept Plan.  In the interim, and as further accommodations to Clark County, SRR and engaged participants, Gypsum again reduced its sought after housing densities within the proposed development plan.

44.     Following the conciliatory density reductions by Gypsum, then Clark County Commissioner Susan Brager ("Brager") repeatedly promised Gypsum Representatives "that

the County would timely process and make a decision on Gypsum's long pending 2011 Concept Plan." The Gypsum Property was located within former County Commissioner Brager's District.

45. Despite former County Commissioner Brager's prior assurances, she again refused to allow Gypsum's Concept Plan to move forward to a Clark County Commission vote citing initially the then pending 2018 primary election and potential controversy over the Gypsum 2011 Concept Plan.

46. During the Summer and Fall of 2018, Brager made repeated assurances to Gypsum Representatives that "she supported the now again reduced density 2011 Concept Plan" and that she "guaranteed" Gypsum's application would be heard by the then acting County Commission before the end of Brager's 2018 commission term. Despite the assurances, the County continued to fail to process the 2011 Concept Plan in "good faith" as required by the Settlement Agreement.

47. Unfortunately, in late 2018 Brager flip-flopped and advised Gypsum she would no longer supported Gypsum's long-stalled 2011 Concept Plan Application.

48. On December 5, 2018, Plaintiff's applications were finally listed on the agenda as items to be considered by the Board. Instead of considering Plaintiff's applications and working towards a Development Agreement, at the urging of the County, Plaintiff's applications were once again held over to a future date.

**F.    Attorney Justin Jones Represents Save Red Rock in the Save Red Rock Litigation and Runs for County Commission.**

49. From its inception to dismissal in November of 2018, Justin Jones, as an attorney with Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and then his own firm, Jones Lovelock LLP, represented Save Red Rock against Gypsum in the Save Red Rock Litigation.

50. Justin Jones, in his capacity as counsel of record for Save Red Rock, conducted extensive discovery and motion practice as against Gypsum Resources and obtained operational, financial, and developmental records and plans of Gypsum Resources as to its Gypsum Property. Moreover, in furtherance of his legal representation of SRR, Jones

1   appeared on behalf of SRR in the Fall of 2016 before the Clark County Planning

2   Commission in opposition to Gypsum's pending applications.

3       51.   During 2017 and 2018, Justin Jones ran for the Clark County Commission seat

4   which was to be vacated by outgoing County Commissioner Brager. Further, during his

5   County Commissioner campaign, Justin Jones ran a campaign aimed at defeating Gypsum's

6   plans to develop the Gypsum Property.

7       52.   In late October of 2018, Justin Jones posted a Halloween picture on his

8   Facebook page of him dressed in his Halloween costume "The Red Rock Guy" and stated his

9   "**superpower is making compelling arguments for preservation and fending off my**

10  **arch-nemesis Jim the Sprawl Developer**." Justin Jones acknowledged that James Rhodes,

11  principal of Gypsum Resources, is his "arch-nemesis." A true and correct copy of Justin

12  Jones' Facebook posting is attached hereto as Exhibit 2.

13      53.   During Justin Jones' campaign for Clark County Commissioner, a central issue

14  in his campaign was the protection of Red Rock Canyon and he regularly used the term "The

15  Red Rock Guy" in many of his campaign advertisements.

16      54.   On November 6, 2018, Justin Jones was elected to the Clark County

17  Commission. Within two (2) days of winning the County Commission election, Jones

18  stipulated to dismiss the Save Red Rock Litigation. Following dismissal, Jones was quoted

19  in the Las Vegas Review Journal that "there was simply a realization that [SRR] resources

20  would be better focused on telling the commission why the project doesn't make sense." "At

21  this point Save Red Rock remains dead set against it" [Gypsum's development plans].

22      55.   Following the November 2018 election, then Clark County Commission Chair,

23  Steve Sisolak, announced the long pending Gypsum 2011 Concept Plan application would

24  again be delayed until the newly elected County Commissioners were seated in January of

25  2019. Tabling Gypsum's County applications until after the County Commission, with years

26  of experience and knowledge of Gypsum's 2011 Concept Plan, was termed out and until the

27  "Save Red Rock Guy" newly elected Jones took office was in bad faith and in violation of

28  the Settlement Agreement.

56.     As expected, when Gypsum's Waiver of Condition Application No. WC-18-400232 (MP-0313-1) finally came forward for hearing in April of 2019, newly elected Commissioner Justin Jones participated in the hearing, made the motion to deny Gypsum's Application, and voted to deny Gypsum's pending Waiver of Condition Applications. Moreover, Clark County removed the 2011 Concept Plan and Specific Plan associated PFNA application from the County Agenda with no action.

57.     Gypsum asserts that the County's above-described actions were done in violation of the 2010 Settlement Agreement and its obligations to process the Major Project Application in "good faith" as required by the Settlement Agreement.

58.     Gypsum further asserts that newly elected Commissioner Justin Jones' actions of moving for, and voting on, Gypsum's pending application was done in contravention of the County's obligations of good faith under the Settlement Agreement.

59.     Moreover, Gypsum asserts that its constitutional rights of due process and equal protection have been violated by Clark County and its newly elected Commissioner Justin Jones.  A fair trial in a fair tribunal is a basic requirement of due process.  This basic tenant of fairness applies to administrative agencies which adjudicate land use matters as well as to Courts.  Gypsum is informed and believes and thereon asserts that Commissioner Jones was, and remains conflicted from participating in the adjudication of Gypsum's development plans.  Simply dismissing the Save Red Rock Litigation does not cure Commissioner Jones' conflict of interest.   Again, as recently as October of 2018, Commissioner Jones has expressly acknowledged Gypsum's principal, Jim Rhodes, is his "arch-nemesis."

60.     Commissioner Jones has acknowledged that Gypsum Resources principal Jim Rhodes in his "arch-nemesis."  *See*, Exhibit 2 attached hereto.  Yet Jones failed to abstain on Gypsum's pending land use matters, moved to deny such matters, and voted against such matters.   In so doing, Gypsum's due process rights to fundamental fairness have been violated.   Further, Clark County has failed, and continues to fail to meet its "good faith" obligations owed to Gypsum.

///

61.     Moreover, Commissioner Jones interfered with Gypsum's attorney-client relationship with Gypsum's long standing law firm, resulting in that firm's withdrawal from representing Gypsum in this matter.   Clark County, through newly elected Commissioner Jones' actions, has effectively deprived Gypsum of representation of its own choosing.   Clark County's actions, which have destroyed Gypsum's right to be represented by counsel of its choice is arbitrary, capricious, and in bad faith in further violation of the Clark County's obligations under the Settlement Agreement.

62.     As of the date of the filing of this Complaint, Plaintiff's 2011 Concept Specific Plan and PFNA applications have still not been considered by Defendants, despite the fact that they have been pending with Defendants for over seven years and Defendants have known for over three years that Plaintiff was not proceeding with any kind of land swap with BLM.

### III.

### FIRST CLAIM FOR RELIEF

#### (Petition for Writ of Mandamus)

63.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

64.     When a governmental body fails to perform an act "the law especially enjoins as a duty resulting from an office, trust or station" or acts in an arbitrary or capricious manner, a writ of mandamus shall issue to correct the action.   NEV. REV. STAT. § 34.160; *see also, Int'l Game Tech., Inc. v. Second Judicial Dist. Court ex rel. Cty. of Washoe*, 179 P.3d 556, 558 (Nev. 2008).

65.     Clark County failed to perform various acts that the law requires including but not limited to the fair, unbiased, and timely processing of Gypsum's Major Project Application Specific Plan and FFNA

66.     Clark County and the Board acted arbitrarily and capriciously by performing or failing to perform the acts enumerated above and because, *inter alia*:

a.     There is no legitimate governmental purpose for the failure of

13

1   Commissioner Jones to fail to abstain from the Gypsum Applications;

2          b.      Clark County and the Board's actions are not based on any reason

3   related to the public health, safety, or well-being;

4          c.      Clark County and the Board violated Gypsum's right to due process.

5   67.     These violations of the Defendants' legal duties and arbitrary and capricious

6   actions compel this Court to issue a Writ of Mandamus directing Clark County and the Board

7   to require Commissioner Jones' recusal from any participation in Gypsum's Applications,

8   and take all other necessary action to correct the Defendants' actions and to require Clark

9   County to deal in "good faith" with Gypsum Applications as required in the Settlement

10  Agreement.

11  68.     As a result of the Defendants' unlawful and arbitrary and capricious actions,

12  Plaintiff has been forced to retain legal counsel to prosecute this action and is therefore also

13  entitled to its damages, costs in this suit, and an award of attorneys' fees pursuant to NRS

14  34.270.

15  **IV.**

16  **SECOND CLAM FOR RELIEF**

17  **(Judicial Review)**

18  69.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth

19  herein.

20  70.     Plaintiff is aggrieved by the decision of Clark County and the Board of County

21  Commissioners in which Commissioner Jones failed to recuse himself in a matter submitted

22  by his "arch-nemesis" Jim Rhodes.  Following his recusal, Commissioner Jones moved to

23  deny Gypsum's pending applications and further voted to deny these applications all the

24  while knowing Gypsum's principal, Jim Rhodes, was his "arch-nemesis."

25  71.     Accordingly, Plaintiff petitions this Court for judicial review of the record on

26  which the Board's action was based.

27  72.     As the action of Clark County and the Board necessitated that Plaintiff hire

28  counsel and incur fees and costs to bring this action, Plaintiff is also entitled to attorneys'

fees and costs of suit.

## V.

### THIRD CLAIM FOR RELIEF

#### (Equal Protection Violation)

73.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

74.     Clark County and the Board have violated Plaintiff's right to equal protection under the Nevada and United States Constitutions.

75.     By failing to timely process and fairly adjudicate Gypsum's Major Project Applications as described herein, Clark County and its Board has unfairly, and in bad faith, targeted Gypsum.

76.     Clark County and the Board intentionally, and without rational basis, treated Plaintiff differently from others similarly situated," and accordingly violated the equal protection clause of the Fourteenth Amendment of the United States Constitution. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

77.     Plaintiff is entitled to damages for these Equal Protection violations.

78.     As the action of Clark County and its Board necessitated that Plaintiff hire counsel and incur fees and costs to bring this action, Plaintiff is also entitled to attorneys' fees and costs of suit.

## VI.

### FOURTH CLAIM FOR RELIEF

#### (Violation of 42 U.S.C. § 1983)

79.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

80.     The Defendants' actions also subject them to liability under 42 U.S.C. § 1983.

81.     The above-referenced Equal Protection violations were committed by Clark County and the Board purportedly acting under color of state laws including but not limited to NRS 237.070-090 and NRS 268.095.

82.     That conduct deprived Plaintiff of the rights, privileges, and immunities secured by the Constitution and/or laws of the United States to which Plaintiff is and was legitimately entitled.

83.     Plaintiff has been damaged by such deprivations in an amount to be determined at trial.

84.     As the above-referenced Constitutional violations are ongoing, Plaintiff is also entitled to injunctive relief from Clark County's arbitrary and capricious action and from further biased and bad faith adjudications by the Board.

85.     Defendants' conduct has required Plaintiff to incur attorneys' fees and costs of suit to bring this action, and Plaintiff is entitled to attorneys' fees and costs under, *inter alia*, 42 U.S.C. § 1983 et seq. and 42 U.S.C. § 1988(b).

## VII.

### FIFTH CLAIM FOR RELIEF

### (Injunctive Relief)

86.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

87.     Plaintiff is entitled to a preliminary and permanent injunction enjoining further Clark County arbitrary and capricious actions and unfair and unconstitutional processing of Gypsum's Major Project Applications.

88.     Clark County and the Board's actions have caused Plaintiff to suffer irreparable harm in the form of delay and uncertainty as to its Major Project Applications.

89.     Plaintiff has no plain, speedy, or adequate remedy at law.  Unless Defendants are enjoined, Plaintiff will continue to suffer irreparable harm, including violations of its Constitutional rights, lost business income, and injury to Plaintiff's business goodwill and other business relationships.  Monetary damages are inadequate to fully compensate Plaintiff because of the difficulty in quantifying lost opportunity costs and harm to business goodwill and other relationships.

90.     Plaintiff has a reasonable probability of success on the merits of its claims and the public interests and relative hardships all weigh in favor of granting injunctive relief.

91.     A preliminary and permanent injunction should therefore issue enjoining the Board's arbitrary and capricious actions, and further enjoining Clark County and the Board to comply with its own laws and policies.   Any injunction should further preclude Commissioner Jones from participating in and voting upon his "arch-nemesis" applications that come before the County.

92.     As the action of Clark County and the Board necessitated that Plaintiff hire counsel and incur fees and costs to bring this action, Plaintiff is also entitled to attorneys' fees and costs of suit.

## VIII.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract)

93.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

94.     The Settlement Agreement is a valid, binding, and existing contract.

95.     Plaintiff has fully performed its obligations and responsibilities under the contract.

96.     Defendants breached the contract by failing to timely and fairly process Plaintiff's development applications in good faith.

97.     As a direct, proximate, and foreseeable cause of the conduct of Defendants as described above, Plaintiff has been damaged in excess of $75,000.00.

98.     As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein.

## X.

## SEVENTH CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

99.     Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

100.    Plaintiff and Defendants are parties to a valid and existing contract; namely, the Settlement Agreement.

101.    The covenant of good faith and fair dealing is inherent and implied in every contract and in particular is implied in the Settlement Agreement.

102.    Defendants owed Plaintiff a duty of good faith and fair dealing.

103.    Defendants have breached their duty of good faith and fair dealing by committing the acts and/or omissions described herein in a manner that was unfaithful to the purpose of the Settlement Agreement.

104.    Plaintiff's justified expectations under the Settlement Agreement were thus denied.

105.    As a direct, proximate, and foreseeable cause of the conduct of Defendants as described above, Plaintiff has been damaged in excess of $75,000.00.

106.    As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein.

## XI.

### EIGHTH CLAIM FOR RELIEF

### (Inverse Condemnation)

107.    Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

108.    Defendants' acts and/or omissions have resulted in a de facto taking of Plaintiff's property and the loss of intended economic benefit to Plaintiff, because the Defendants have delayed timely consideration of Plaintiff's development applications in good faith, thus depriving Plaintiff of its right to develop its property.

109.    Defendants' taking of Plaintiff's property by the public constitutes a taking by inverse condemnation which requires compensation under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Nevada Constitution, requiring Defendants to pay full and just compensation to Plaintiff.

110.    As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein pursuant to NRS 37.185.

## XII.

### NINTH CLAIM FOR RELIEF

#### (Pre-Condemnation Damages)

111.    Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

112.    Defendants' acts and/or omissions have resulted in Plaintiff suffering pre-condemnation damages in an amount to be determined, due to the massive delays in processing Plaintiff's development applications without paying Plaintiff just compensation.

113.    The pre-condemnation taking of Plaintiff's property by the public for use mandates compensation under the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Nevada Constitution, requiring Defendants to pay full and just compensation to Plaintiff in an amount to be determined.

114.    As a result of the Defendants' wrongful conduct, Plaintiff has been required to retain legal counsel to prosecute this action; Plaintiff is therefore entitled to recover its reasonable attorney's fees and costs of suit incurred herein pursuant to NRS 37.185.

## XIII.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    For the issuance of a writ of mandamus;

2.    For judicial review of the record and history on which Clark County and the Board allowed Commissioner Jones to move to deny and vote to  deny Gypsum's Applications while Gypsum principal, Jim Rhodes, is his self-proclaimed "arch-nemesis."

3.    For declaratory relief as set forth above;

4.    For a preliminary and permanent injunction enjoining Clark County's arbitrary and capricious actions, and further enjoining Clark County to comply with all applicable laws

and policies by properly, fairly, timely, and in good faith;

5.      For payment of full and just compensation for the taking of property from the subject property in excess of Seventy-Five Thousand Dollars ($75,000.00);

6.      For Pre-Condemnation damages in an amount to be proven at trial;

7.      For compensatory and special damages as set forth herein;

8.      For interest from the date of taking until judgment;

9.      For pre-judgment and post-judgment interest, as allowed by law;

10.     For attorneys' fees and costs of suit;

11.     For all other remedies and relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all issues so triable.

DATED this 17th day of May, 2019.

GILLETTE LAW PLLC

Ronald E. Gillette (#4998)
8912 Spanish Ridge Avenue, Ste. 200
Las Vegas, Nevada 89148
702-570-7216
Fax:  702-586-3527
*Attorneys for Plaintiff*
*Gypsum Resources, LLC*

## DECLARATION OF RONALD E. GILLETTE, ESQ.

STATE OF NEVADA      )
                            ) ss:
COUNTY OF CLARK      )

      Ronald E. Gillette, Esq., deposes and attests the following, all of which is stated upon personal knowledge except for those matters stated upon information and belief, if any, and as for those matters, Declarant believes them to be true.

      1.      I am counsel of record for the Plaintiff in the above matter.

      2.      The attached exhibits attached hereto as Exhibits 1 and 2 are true and correct copies of the original documents.

      I hereby declare under penalty of perjury of the laws of the United States and the State of Nevada that the foregoing is true and correct.

      DATED this 17th day of May, 2019.

RONALD E. GILLETTE, ESQ.

Exhibit 1

1 | DAVID ROGER
District Attorney
2 | **CIVIL DIVISION**
State Bar No. 002781
3 | By: **ROBERT T. WARHOLA**
Deputy District Attorney
4 | State Bar No. 004410
500 South Grand Central Pkwy.
5 | P. O. Box 552215
Las Vegas, Nevada 89155-2215
6 | (702) 455-4761
Fax (702) 382-5178
7 | Attorneys for Defendants
District Attorney David Roger,
8 | County of Clark and Board of
County Commissioners of the
9 | County of Clark

10 | UNITED STATES DISTRICT COURT

11 | DISTRICT OF NEVADA

12 |

13 | GYPSUM RESOURCES, LLC, a Nevada limited)
liability company,
14 | )                                Case No:  CV-S-05-0583-RCJ (LRL)
Plaintiff,        )
15 | )
vs.                )
16 | )
CATHERINE CORTEZ MASTO, in her official )
17 | capacity as Attorney General of the State of )
Nevada and her agents and successors; DAVID )
18 | ROGER, in his official capacity as District )
Attorney of the County of Clark and his agents )
19 | and successors; COUNTY OF CLARK, a )
political subdivision of the State of Nevada; )
20 | BOARD OF COUNTY COMMISSIONERS OF )
THE COUNTY OF CLARK; and DOES 1-75, )
21 | )
Defendants.      )
22 | )
23 | )

24 | **STIPULATION AND SETTLEMENT AGREEMENT PURSUANT TO COURT**

25 | **ORDERED SETTLEMENT CONFERENCE; [PROPOSED] ORDER**

26 |

27 | This Stipulation and Settlement Agreement ("Agreement") is entered into as of

28 | this 21st day of April, 2010, by and between Gypsum Resources, LLC, a Nevada limited

1 of 12

liability company ("Gypsum") on the one hand, and the County of Clark, a political subdivision of the State of Nevada, the Board of Commissioners of the County of Clark and David Roger, in his official capacity as District Attorney of the County of Clark (collectively the "County") on the other.  Gypsum and County are collectively referred to in this Agreement as "the Parties."  This Agreement is pursuant to the court imposed Mandatory Settlement Conference as ordered in the Federal Lawsuit described below.  This Agreement is not an approval of any specific development plan and any such plan must be considered by the County's Board of County Commissioners ("BCC") through the normal Title 30 public hearing process.

This Agreement is entered into by and between the Parties based on the following Recitals of Fact:

## Recitals of Fact

A.      Gypsum owns approximately 2400 acres of real property located on and around Blue Diamond Hill in Clark County ("the Gypsum Mine Property" or "Property"), which Property is the subject of the Lawsuits described below.   A portion of the Property is located inside the boundaries of the Red Rock Canyon National Conservation Area ("RRCNCA") and a substantial portion of the Property is located outside the boundaries of the RRCNCA.

B.      Senate Bill 358 (the "State law") was passed by the Nevada Legislature and signed into law by Governor Kenny Guinn on or about May 19, 2003.

C.      On or about May 21, 2003, the County adopted Clark County Ordinance 2914 ("CCO 2914") to expand the Red Rock Design Overlay District ("RROD") and make other changes to the Clark County Code as set forth in CCO 2914.  As a result of the adoption of CCO 2914, the Gypsum Mine Property was included in the RROD and subjected to the provisions of CCO 2914.

D.      On or about May 10, 2005, Gypsum filed a Complaint for Declaratory and Injunctive Relief against the County and others, in the action entitled *Gypsum Resources, LLC v. Masto, et al.*, Case No. CV-S-05-0583-RCJ-LRL in the United States District Court for the District of Nevada ("Federal Lawsuit").  On or about May 18, 2005, Gypsum filed a parallel action for Declaratory and Injunctive Relief against the County and others, in the

action entitled *Gypsum Resources, LLC v. State of Nevada, et al.,* Case No. 05-00614A ("State Lawsuit") in the First Judicial District Court of the State of Nevada (The Federal and State Lawsuits are collectively referred to herein as "the Lawsuits"). In both Lawsuits, Gypsum sought, *inter alia*, to invalidate CCO 2914 on numerous grounds.

E. On or about December 7, 2005, the action filed by Gypsum in the First Judicial District Court of Nevada was stayed while the related Federal case referenced above was pending.

F. On or about March 27, 2008, the Federal District Court issued its Order granting in part and denying in part the motions to dismiss that had been filed by the County and Catherine Cortez Masto, in her capacity as Attorney General of the State of Nevada, ("State") also a named defendant in the Federal Lawsuit.

G. Subsequent thereto, Gypsum, the County and the State filed motions for summary judgment in the Federal Lawsuit. On or about November 24, 2009, the Federal District Court issued its Order granting in full the motion made by Gypsum as to the State, thereby voiding the State law. The Federal District Court also granted in part the County motion on substantive due process grounds and denied in part the County's motion on equal protection grounds. The Federal District Court also denied the State's motion on equal protection and constitutional grounds and granted the State's motion as to substantive due process.

H. As a result of the Federal District Court's Orders issued on March 27, 2008 and November 24, 2009, Gypsum's First Cause of Action, for Violation of Equal Protection remains to be tried. A trial call is scheduled for April 26, 2010 in the Federal Lawsuit, and trial is scheduled to commence on May 4, 2010.

I. The Parties wish to settle both Lawsuits against the County only, on the terms set forth in this Agreement.

J. The County and Gypsum were ordered to mandatory settlement conferences by the Federal District Court and each Party recognizes the costs and risk of trial, and potential for financial exposure, and wishes to resolve their differences in the manner and terms described herein.

K. The current law allows for the development of the Property as RU zoning. Gypsum desires to submit and the County is willing to allow the submittal of an application

3 of 12

to the BCC pursuant to Chapter 30.20 of the Clark County Code for a Major Project Development within the Exception Area as shown on Exhibit A attached hereto.   This application shall also include such areas as are needed for easements, rights of way, utilities, drainage and roadways and other infrastructure needs.

L.  Gypsum and County understand that the Property and any exchanged lands subsequently acquired (as herein defined in paragraph 7 below) require access as part of the Major Project development.

M.  The County and Gypsum recognize that through this Agreement there are no guarantees, commitments or binding obligations by County to approve a Major Project application, or to approve any uses or increased densities proposed by Gypsum as part of any Major Project application and that the County retains discretion regarding any application submitted by Gypsum as a result of this Agreement.

Terms of Agreement

Now, therefore, it is hereby agreed by and between the Parties:

1.    Recitals

The foregoing Recitals of Fact are true and correct, are incorporated herein, and form a material part of this Agreement.

2.    Adoption of the Amending Ordinance

On March 17, 2010, the BCC introduced an ordinance to amend CCO 2914 by adding new Section 30.48.312 to the Clark County Code ("the Amending Ordinance").  The Amending Ordinance (ORD-0210-10) is scheduled for a public hearing on the BCC's April 21, 2010 Zoning/Subdivisions/Land Use Agenda.  A true and correct copy of the agenda report and  the Amending Ordinance for the April 21, 2010 public hearing is attached to this Agreement as Exhibit B.  It is an express condition precedent to the effectiveness of this Agreement that the BCC  adopt the Amending Ordinance in the form attached to Exhibit B, or with such clarifying changes to the language of the Amending Ordinance as may be approved by Gypsum, at or before the April 21, 2010 public hearing ("the Adoption").  If the Adoption does not occur, this Agreement shall be of no force and effect, and the Parties shall proceed in the Lawsuits as if this Agreement had never been entered into.

4 of 12

3.   Voluntary Dismissal of the Lawsuits and Release

   If the Amending Ordinance is adopted, and within five (5) business days after the effective date of the Amending Ordinance, Gypsum agrees that it will file voluntary dismissals of the Lawsuits against the County only, under Fed.R.Civ.Pro. 41(a) and Nev.R.Civ.Pro. 41(a).  The State Lawsuit shall be dismissed with prejudice.  Subject to the clarifications and limitations set forth in paragraph 4, below, the Federal Lawsuit shall be dismissed without prejudice.  The County agrees to cooperate with Gypsum regarding the filing of the voluntary dismissals.  In connection with its voluntary dismissals of the Lawsuits, and subject to paragraph 4 below, Gypsum agrees that Gypsum, its successors, heirs and assigns, fully and forever release, acquit, and forever discharge County, and each and every one of County's commissioners, directors, employees, attorneys, agents, successors, assigns and administrators and all other County representatives, of and from all claims, actions, suits, causes of action, demands, rights, damages, costs, expenses, losses, attorney's fees and compensation whatsoever, at law and in equity, whether known or unknown, foreseen or unforeseen, which Gypsum has now or which may hereafter accrue, relating to, or in any way connected with, the events and occurrences as set forth and described in and which are the subject of the Lawsuits, other than the rights and obligations arising under this Agreement.  This Release by Gypsum is intended as a full and complete release and discharge of any and all claims that the undersigned may or might have or had by reason of the incidents or activities alleged in the Lawsuits.

   The Parties agree that the Release includes, but is not limited to, any and all claims for attorneys' fees and costs Gypsum may have against County arising under 42 U.S.C. § 1988, or any other Federal or State statute or regulation under which Gypsum may have a claim or interest, whether that claim or interest be possessed by Gypsum itself, or whether it be transferred, assigned, bartered, exchanged, sold, or otherwise conveyed to any third party.  Gypsum hereby declares and represents that the undersigned is executing this Release after having received full legal advice as to their rights from their legal counsel.

   The Parties agree that they will cooperate with each other at or before the trial call scheduled for April 26, 2010 to advise the Federal District Court of this Agreement and to seek a reasonable continuance of the trial, if necessary, in order to allow the filing and entry

of the dismissal.  The Parties agree that they will similarly cooperate with each other regarding the dismissal of the State Lawsuit.

    4.    Re-filing of the Lawsuit; Tolling

        Notwithstanding the Release contained in paragraph 3 above, Gypsum shall be permitted to re-file the Federal Lawsuit if within twenty four (24) months after the Adoption, the Amending Ordinance is repealed, cancelled, voided, amended, or superseded through a new ordinance by Clark County that prohibits the filing or formal consideration by the BCC of any Major Project application filed by Gypsum under this Agreement.   If such Federal Lawsuit is re-filed in accordance with this paragraph, the County agrees that all applicable defenses to the Federal Lawsuit based on the statute of limitations or timeliness with be tolled from the date of entry of dismissal under paragraph 3 above to the date of such re-filing.  So long as the Amending Ordinance is not repealed, cancelled, voided, amended or superseded through a new ordinance by Clark County that prohibits the filing or formal consideration by the BCC of any Major Project application filed by Gypsum under this Agreement, Gypsum shall have no right to re-file the Federal Lawsuit. If Gypsum should nonetheless attempt to re-file the Federal Lawsuit in violation of this paragraph: (1) the voluntary dismissal filed under paragraph 3 shall be treated as if it had been filed with prejudice; (2) the statute of limitations shall not be tolled as to any such filing, as otherwise provided in this paragraph; and (3) Gypsum agrees that any such unpermitted Federal Lawsuit shall be subject to immediate dismissal with Gypsum paying any and all of the County's fees and costs incurred in securing such dismissal.  Following 24 months of its adoption, if the Amending Ordinance is not repealed, canceled, voided, amended or superseded through a new ordinance by Clark County that prohibits the filing or formal consideration by the BCC of a Major Project application by Gypsum under this Agreement, the dismissal without prejudice of the Federal Lawsuit shall immediately and automatically become a dismissal with prejudice.  Notwithstanding the above, in the event Senate Bill 358 is retroactively reinstated by a final judgment of a court of law, the State of Nevada enacts another law or a court of law issues an order that prohibits the filing or the acceptance of an application for increased density or intensity on the Property, then Gypsum shall not be permitted to refile the Federal Lawsuit against Clark County.  The County agrees that it shall not be a party in opposition to Gypsum in any action in a court of law that seeks prohibition

1   of a filing or which seeks to prevent the acceptance of an application for inc

2   intensity on the Property.

3           With regard to the State Lawsuit, the Parties agree that the State La

    dismissed with prejudice within five (5) business days of the effective date of the Amending
4
    Ordinance.  Upon the filing of a dismissal with prejudice of the State Lawsuit, the County
5
    hereby waives any right to claim the defenses of res judicata or collateral estoppel on any
6
    future claim that may be filed in the Federal Lawsuit during the 24-month period specified in
7
    this Section and only if the Federal Lawsuit is properly before the Court on the grounds that
8
    the County repealed, cancelled, voided, amended or superseded the Amending Ordinance
9
    through a new ordinance that prohibits the filing or formal consideration by the BCC of any
10
    Major Project application filed by Gypsum under this Agreement.

11          5.   The Major Project Application

12          The Parties acknowledge that, after the Adoption of the Amending Ordinance and

13  the approval of this Agreement, Gypsum intends to submit a Major Project application for

    the development of a master planned community pursuant to Chapter 30.20 of the Clark
14
    County Code, and subject to all generally applicable and currently adopted Codes ("the
15
    Major Project Application").  The County and Gypsum acknowledge that the Major Project
16
    Application may include adjustments, considerations and deviations to take into account the
17
    previous mining activities on the Property.   The County agrees that it will process the Major
18
    Project Application under the Major Projects process in good faith.  Gypsum understands
19
    that the County, by this Agreement, cannot and is not committing to approval of any
20
    particular Major Project and/or any particular densities or uses.

21          6.   Transportation and Access

22          The County and Gypsum recognize that there are significant issues dealing with

23  access to the Property. The Parties agree that any Major Project Application that seeks

    increased density (residential) or intensity (non-residential) must propose a primary access to
24
    and from the East. The County recognizes the challenges faced by the topography of a road
25
    to the East and further recognizes that requests for certain adjustments, considerations, and
26
    deviations will be included as part of the Major Project Application.   Although the exact
27
    location of the primary access to the East will be determined during the Major Project
28
    Process, the Parties agree that the primary access shall not connect to State Route 159. The

7 of 12

Parties agree that Gypsum may only take permanent secondary access from State Route 159 for life safety purposes. For purposes of this Agreement, "life safety purposes" means access that is closed to daily vehicular traffic, but that may be utilized by police, fire or emergency services, or by the general public in the event of an emergency. Subject to approvals and conditions that may be required by any government entity having jurisdiction over such access issues and roadways, the Parties also agree that Gypsum may utilize access from State Route 159 for temporary purposes during construction of the initial phase of development of any approved Major Project in accordance with conditions established by the County during the Major Project process. Gypsum acknowledges that the County is not obligated under this Agreement to acquire and pay for property so as to allow for or facilitate access to the Property.

 7. Exchange Properties.

 The County acknowledges that Gypsum will apply for a land exchange or exchanges as the case may be, so the existing Property inside the boundaries of the Red Rock Canyon National Conservation Area ("RRCNCA") will be exchanged for land outside of the RRCNCA. The intent herein is to exchange property Gypsum owns inside the RRCNCA for property that is outside of such area, so that ultimately none of Gypsum's property will be in the RRCNCA when the exchange(s) is completed. The intent herein is also to prevent future development of the Property within the RRCNCA by limiting the actual development to the identified Exception Area. If the County within its absolute and sole discretion is in favor of a proposed land exchange(s) between Owner and BLM for the Property inside the boundaries of the RRCNCA, then the County agrees to provide a letter in support of the exchange(s). In no event is the County making any representation or guarantee that the County will be in favor of such an exchange(s) or that such exchange(s) will be approved by the Bureau of Land Management.

 8. No Third-Party Beneficiary

 The State is not a party to this Agreement, and nothing in this Agreement shall have any effect on Gypsum's claims against the State in the Lawsuits. The Parties do not intend to confer any rights whatsoever (including, but not limited to, rights as a third-party beneficiary) on the State or any other persons, parties, or entities who are not among the Parties to this Agreement. County agrees that it will not provide legal assistance to the State

in the Lawsuits or in any appellate proceedings arising out of the Lawsuits. For the purpose of this Agreement, "legal assistance" does not include providing factual information if specifically requested from the State or testimony by witnesses called or cross-examined by the State.

9.   Miscellaneous Provisions

A.   The Parties have each had the opportunity to draft, review, and edit the language of this Agreement. Accordingly, no presumption for or against any of the Parties arising out of the drafting of any part or all of this Agreement will be applied in any action related to, connected to, or involving this Agreement.

B.   The Parties agree to execute and deliver such additional documents and instruments, and to perform such additional acts, as may be necessary or appropriate to effectuate, consummate, or perform any of the terms, provisions, or conditions of this Agreement.

C.   This Agreement, and its construction, validity, performance, and effect shall be governed by the laws of the State of Nevada, applicable to contracts executed and wholly to be performed therein. The Parties stipulate that the Federal Court in the State of Nevada may retain jurisdiction over any future action to enforce or interpret the terms of this Agreement.

D.   This Agreement shall be binding upon and inure to the benefit of, each of the Parties and their representatives, successors, grantees, and assigns.

E.   The Parties expressly acknowledge that the effect and import of this Agreement, including all rights and obligations under it, have been fully explained to them by their own counsel.

F.   The Parties shall bear their own attorneys' fees and costs incurred in connection with the prosecution or defense of the Lawsuits. In any action arising out of the performance under or interpretation of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees.

G.   The Parties acknowledge that none of them, nor any agent or attorney of any of them, has made any promise, representation or warranty whatsoever, express, implied, or statutory, not contained in this Agreement, concerning the subject matter of this Agreement, to induce the execution of this Agreement, and the Parties further acknowledge

1  that they have not executed this Agreement in reliance on any such promise, representation,

2  or warranty.  This Agreement contains the entire agreement between the Parties on the

3  subject matter contained herein, and is the final and exclusive statement of all the

4  agreements, conditions, promises, representations, and covenants between the Parties with

5  respect to the subject matter of this Agreement.  This Agreement may not be modified except

   by a writing duly executed by all of the Parties.

6          H.      All required corporate, entity, or governmental approvals to enter into and

7  perform this Agreement have been duly obtained by the Parties.  All of the Parties have the

8  authority to enter into and perform this Agreement, and each of the signatories to this

9  Agreement is fully authorized to sign for, and to bind, the Parties to this Agreement for

10 whom they are signing.

11         I.      The headings used in this Agreement are solely for the convenience of the

   Parties and are not intended to have any independent meaning.  The headings shall not

12 modify in any way, or be used to interpret, any of the terms of this Agreement.

13         J.      This Agreement may be executed in any number of counterparts, each of

14 which when so executed shall be deemed to be an original and all of which taken together

15 shall constitute one and the same Agreement.  One or more executed counterparts of this

16 Agreement may be delivered by fax or by email attachment, with the intention that they shall

17 have the same effect as an original counterpart.

18         K. This Agreement is the compromise of disputed claims and shall not be

19 construed as an admission of liability on the part of any Party.  The Parties hereto, by this

   Agreement or otherwise, do not admit liability, illegality, impropriety or wrongdoing of any

20 kind.

21

22     Dated:  April____, 2010          COUNTY OF CLARK
                                        a Political Subdivision of the State of
23                                      Nevada

24

25                                      By:_____

26                                      Its:_____

27

28
                                                               10 of 12

1

Dated:  April ___, 2010          BOARD OF COMMISSIONERS OF THE
                                                 COUNTY OF CLARK

2

3                                                      By:_____

4                                                      Its:_____

5

6       Dated:  April ___, 2010          DAVID ROGER,
                                                     in his official capacity as District Attorney
                                                     of the County of Clark

7

8                                                      By:_____

9

10     Approved as to form by:

        DAVID ROGER, District Attorney

11

12     By: _____
        ROBERT T. WARHOLA

13     Attorney for County of Clark, Board of Commissioners
        of the County of Clark, and David Roger, in his official

14     capacity as District Attorney of the County of Clark

15

16     Dated:  April ___, 2010          GYPSUM RESOURCES, LLC
                                                     a Nevada limited liability company

17                                                    By:    Truckee Springs Holdings, Inc.
                                                              a Nevada corporation

18                                                    Its:    Manager

19

20                                                    By:_____

21                                                    Its:_____

22

23     Approved as to form by:

        MANATT, PHELPS & PHILLIPS

24

25     By: _____
               EDWARD G. BURG

26            Attorneys for Gypsum Resources, LLC

27

28                                                                                     11 of 12

## ORDER

The Parties' foregoing Stipulation and Settlement Agreement Pursuant to Court Ordered Settlement Conference is hereby approved, accepted, and adopted as the order of this Court.

Pursuant to paragraph 9(C) above, the Court hereby retains jurisdiction over any future action to enforce or interpret the terms of this Agreement.

HON. ROBERT C. JONES
United States District Judge

DATED: _____

12 of 12

Exhibit 2

I dressed up as alternative superhero The Red Rock Guy for Halloween! My superpower is making compelling arguments for preservation and fending off my arch-nemesis, Jim the Sprawl Developer!

