UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GYPSUM RESOURCES, LLC, a Nevada
limited liability company,

Plaintiff,

v.

CLARK COUNTY, a political subdivision of
the State of Nevada; and CLARK COUNTY
BOARD OF COMMISSIONERS,

Defendants.

CLARK COUNTY, a political subdivision of
the State of Nevada; and CLARK COUNTY
BOARD OF COMMISSIONERS,

Counterclaimant,

v.

GYPSUM RESOURCES, LLC, a Nevada
limited liability company,

Counterdefendant.

Case No. 2:19-cv-00850-GMN-EJY

**ORDER**

Pending before the Court is Gypsum Resources, LLC's Motion to Convene Evidentiary Hearing for Imposition of Sanctions for Destruction of Evidence.[1]  ECF Nos. 55 and 56.  The Court has considered the Motion, the Opposition filed by Clark County and the Clark County Board of Commissioners[2] (ECF No. 59), the Opposition filed by non-party Clark County Commissioner Justin Jones[3] (ECF No. 60), the Declaration of Brian R. Hardy (counsel for Commissioner Jones) in Support of Commissioner Jones' Opposition to Gypsum's Motion (ECF No. 61), the Declaration of Commissioner Jones in Support of his Opposition to Gypsum's Motion (ECF No. 62), Gypsum's Reply in Response to Defendants' Opposition to Gypsum's Motion (ECF No. 65), and Gypsum's

---

[1]    Hereinafter Gypsum Resources, LLC will be referred to as "Gypsum" or "Plaintiff."  The Motion to Convene Evidentiary Hearing will be referred to as "Gypsum's Motion" or the "Motion."
[2]    Hereinafter the "County" and "CCBC" or the "Board of Commissioners."  The County and CCBC or the Board of Commissioners are collectively referred to as "Defendants."
[3]    Hereinafter "Mr. Jones" or "Commissioner Jones."

1

Reply in Response to Commissioner Jones' Opposition to Gypsum's Motion (ECF No. 67). The Court held an evidentiary hearing regarding Gypsum's Motion on October 20, 2022. The presentations at that hearing were also considered by the Court.

**I.    Background**

The instant Motion does not ask the Court to grant sanctions, but argues the Court should convene an evidentiary hearing so that Plaintiff can "prove" spoliation—the destruction of evidence was "intentional, prejudicial and designed to interfere with this Court's lawful adjudication of Gypsum's rights." ECF No. 56 at 21. *See also* ECF No. 76 at 66 (stated by counsel for Gypsum: "We're here today to decide whether or not the Court should hold an evidentiary hearing."). Nonetheless, Gypsum tells the Court that at the hearing it will ask the Court "to strike the County's answer and enter a finding of liability" while imposing monetary sanction against the County, the CCBC, and Commissioner Jones. *Id*. at 21-22. Gypsum contends that a hearing is the best method for determining "the appropriate sanctions while protecting a parties' due process rights." *Id*. at 16 *citing Wyle v. R.J. Reynolds Indus., Inc.*, 709 F. 2d 585, 592 (9th Cir. 1983). Gypsum further offers that an evidentiary hearing will allow the Court to "make appropriate inferences and credibility determinations … [that] will establish the intentional destruction of evidence," done for purposes of concealing Commissioner Jones' "and others in the County" desired "actions against Gypsum, including the illegal quid pro quo to deprive Gypsum of a vote." *Id*.

Based on the title of Gypsum's Motion, its contents and conclusions, the Oppositions filed, the Reply, and statements made by counsel for Plaintiff, the Court concludes the Motion seeks only an order setting an evidentiary hearing, not an order applying the legal paradigms to case specific facts for purposes of ruling on a request for sanctions.[4] To the extent, in the absence of an evidentiary hearing, Gypsum seeks the imposition of sanctions, the Court finds additional briefing is necessary. While Gypsum discusses Commissioner Jones' conduct supporting Gypsum's spoliation argument in depth, Gypsum treats the discussion regarding Defendants in a far more summary fashion.[5] Thus,

---

[4]     In Reply, Gypsum states: "While the County generally asserts that sanctions should not be imposed, it fails to address *the crux of Gypsum's Motion – an evidentiary hearing should be held to establish a complete record and the appropriate sanctions imposed*." ECF No. 65 at 12. At the hearing Gypsum's counsel stated: "… this is a motion, not for sanctions, per se, but a motion to convene an evidentiary hearing …." ECF No. 76 at 64.

[5]     *Compare* ECF No. 56 at 18-20 *and id*. at 21

the Court declines to rule on a request for sanctions, if any, against Defendants and/or Commissioner Jones without the parties further addressing the serious legal issues raised.

Nevertheless, Defendants respond to Gypsum's Motion arguing the text messages on Commissioner Jones' personal cell phone, which are no longer available, were in the "sole custody" of Commissioner Jones who is not a defendant in this action. ECF No. 59 at 3. Albeit not in one place, Defendants contend that the allegedly destroyed text messages could never have included relevant evidence relating to the claims asserted by Gypsum. *Id*. at 2, 10-11, 15-17. Defendants state Commissioner Jones' subjective intent is irrelevant to the issues presented by Plaintiff. *Id*. at 18-23. Defendants argue that their duty to preserve electronically stored information ("ESI") was not triggered because they could not divine Plaintiff would file suit immediately following a CCBC vote on April 17, 2019 or that Commissioner Jones' personal cell phone held information relevant to the CCBC's vote on that date. *Id*. at 13. Finally, Defendants make an unclean hands argument. *Id*. at 23-25.

Commissioner Jones argues the Court cannot exercise jurisdiction over him with respect to sanctions and, therefore, there is no reason to convene an evidentiary hearing. ECF No. 60 at 8. Further, if Rule 37 is applied by the Court, Mr. Jones contends Plaintiff's request for sanctions fails because Plaintiff suffered no prejudice. *Id*. at 10. Commissioner Jones ignores well settled case law regarding the Court's inherent authority to sanction a non-party "for abuse of the judicial process." *Arrowhead Capital Finance, Ltd. v. Picturepro, LLC*, Case No. MC 21-0300-GM (JPRx), 2022 WL 1843136, at *1 (C.D. Cal. Apr. 11, 2022), *citing Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (as amended).

In Reply, Gypsum argues that by repeatedly referring to Commissioner Jones' destruction of ESI as "alleged," provides additional support for the evidentiary hearing requested. ECF No. 65 at 2. Gypsum further argues Defendants' assertion of legislative privilege is overbroad. *Id*. at 2, 10-11. Gypsum contends Defendants' undisputed failure to take any steps to preserve evidence until August 7, 2020, a year after this case commenced, demonstrates a violation of its legal duties. *Id*. at 4-5. Gypsum contends Commissioner Jones' ESI destruction is properly imputed to Defendants. *Id*. at 5-6.

1    Gypsum also argues litigation was reasonably foreseeable upon the 2:56:12 p.m. conclusion

2    of the April 17, 2019 vote (ECF No. 56 at 248 (Ex. 23)) denying Gypsum's request for

3    reconsideration because of the long history of litigation between the parties and because

4    Commissioner Jones, approximately three hours after the vote (sometime before 6:09:34 p.m. that

5    day), deleted every text message on his personal cell phone.  ECF No. 56 at 501 (Ex. 38).  Those

6    communications, as they pertained to County business, were public records Defendants had a legal

7    duty to preserve.  ECF No. 65 at 5-6.  Gypsum takes issue with Defendants' contention that the

8    information destroyed by Commissioner Jones was irrelevant to any claim before the Court because,

9    of course, it is impossible to know what was contained in the destroyed information.  *Id*. at 6.[6]

10    Gypsum replies to Commissioner Jones' Opposition to its Motion reiterating that Mr. Jones

11    has interjected himself into these proceedings as well as proceeding before the Bankruptcy Court

12    pertaining to the imaging of his phone.  ECF No 67 at 3-4.  Gypsum argues what it characterizes as

13    Commissioner Jones' failure to be candid with the federal courts through careful wordsmithing and

14    shifting arguments.  *Id*. at 5-6.  Gypsum stresses the Court's inherent authority to sanction a non-

15    party who has abused the litigation process and caused litigants to incur unnecessary expenses.  *Id*.

16    at 7-8.  Gypsum concludes that Commissioner Jones' deletion of his text messages is spoliation

17    subject to Fed. R. Civ. P. 37 sanctions.  *Id*. 9-12.

18    **II.    Discussion**

19          A.    The Court is Not Required to Hold an Evidentiary Hearing.

20    What is before the Court is not whether sanctions are appropriately granted against the

21    County, CCBC, and/or Commissioner Jones, but whether an evidentiary hearing is appropriately

22    held in order to facilitate a determination of what sanctions should be granted.  Thus, the Court is

23    not deciding if the disappearance of all text messages on Commissioner Jones' personal cellular

24    telephone within hours of an April 17, 2019 vote, which went against Plaintiff, is spoliation and

25    sanctionable, but whether an evidentiary hearing is needed to determine if spoliation occurred.

26

27    ───────────────

28    [6]    The Court sets aside the arguments regarding unclean hands.  The evidence does not support Defendants'
contention on this issue as there is no evidence that individuals on whom Defendants focus destroyed ESI.  Contrary
evidence shows production of a substantial number of documents for Defendants' review.

1    There is no doubt that "[w]hen necessary, the district court may hold an evidentiary hearing

2    on a motion for sanctions." *Wyle*, 709 F.2d 592.  This language demonstrates the district court has

3    discretion, but is not required, to hold an evidentiary hearing prior to imposing sanctions.  In fact,

4    case law establishes that a sanctioned party's due process rights are fully satisfied through "[t]he

5    opportunity to brief the [sanctions] issue." *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,

6    210 F.3d 1112, 1118 (9th Cir. 2000) (internal citation omitted).  This leads to the logical conclusion

7    that a party seeking an evidentiary hearing for purposes of determining whether to impose sanctions

8    has no due process right to such a hearing so long as the opportunity to brief is provided.

9        B.   The Duty to Preserve Must be Decided Before Sanctions Can be Considered.

10   The Court is mindful that parties "engage in spoliation of documents as a matter of law only

11   if they had some notice that the documents were potentially relevant to the litigation before they

12   were destroyed." *United States v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002).[7]

13   Further, prior to imposing sanctions, the Court will have to find fault.  *Holiday v. Am. Cas. Co. of*

14   *Reading, PA*, Case No. 2:11-cv-02089-GMN, 2013 WL 1955561, at *2 (D. Nev. May 10, 2013)

15   (internal citation omitted).  It is well settled that "[a] party's destruction of evidence need not be in

16   bad faith to warrant … imposition of sanctions. …  District courts may impose sanctions against a

17   party that merely had notice that the destroyed evidence was potentially relevant to litigation. …

18   However, a party's motive or degree of fault in destroying evidence is relevant to what sanction, if

19   any, is imposed." *In re Napster Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1066-67 (N.D. Cal.

20   2006) (internal citations omitted).  The issue of fault and, therefore, motive or degree of fault, may

21   be significant if sanctions are to be considered by the Court.

22   Here, after reading the briefs, reviewing more than 1,000 pages of exhibits, reviewing records

23   from the Bankruptcy Court proceedings involving Plaintiff and the imaging of Commissioner Jones'

---

[7]    Spoliation is defined as:
> the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.  ... A party must preserve evidence it knows or should know is relevant to a claim or defense by any party, or that may lead to the discovery of relevant evidence ... .  The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.

*Gonzalez v. Las Vegas Metropolitan Police Dept.*, Case No. 2:09-cv-00381-JCM-PAL, 2012 WL 1118949, at *5 (D. Nev. Apr. 2, 2012) (internal citations omitted).

cell phone, the undersigned has little doubt that text messages on Commissioner Jones' phone were deleted within hours of the April 17, 2019 CCBC unanimous vote to deny Plaintiff a rehearing on an access condition previously set by the Board of Commissioners. There is also no legal doubt that at least some of the information on Commissioner Jones' personal cell phone, subsequent to Commissioner Jones taking office in early January 2019, was public record. *Comstock Residents Ass'n v. Lyon Cty. Bd. of Comm'rs*, 414 P.3d 318, 323 (Nev. 2018).

However, spoliation occurs when there is the destruction of or failure to preserve evidence "in pending or reasonably foreseeable litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp.3d 1040, 1051-52 (S.D. Cal. 2015) (citing *Kitsap Physicians Serv.*, 314 F.3d at 1001. "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011).

The duty to preserve records may arise before litigation is filed. *Apple v. Samsung*, 888 F. Supp.2d 976, 991 (N.D. Cal. 2012) (there is a duty to preserve evidence as soon as potential litigation is reasonably foreseeable) (internal citations omitted). But the fact that a person or entity "could file a complaint or even might" do so is not enough to trigger the duty to preserve ESI. *Aberin v. American Honda Motor Company, Inc.*, Case No. 16-cv-04384-JST, 2017 WL 6493095, at *2 (N.D. Cal. Dec. 17, 2017) "The future litigation must be probable, which has been held to mean more than a possibility." *In re Napster*, 462 F.Supp.2d at 1068 (internal citation and quote marks omitted). "A general concern over litigation does not trigger a duty to preserve evidence." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009). Whether litigation is foreseeable is a fact intensive question that must be assessed on a case-by-case basis. *Micron Tech., Inc.*, 645 F.3d at 1320-21 (collecting cases). This assessment is a flexible, fact specific standard that allows a district court to exercise the discretion necessary to confront the various factual situations inherent in a spoliation inquiry. *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).

Here, as stated above, the Court finds such an evidentiary hearing is not necessary at this juncture, to make a sanctions determination. Rather, the Court finds if Gypsum seeks sanctions against Defendants and/or Commissioner Jones for conduct engaged in by Commissioner Jones, the

parties must more fully and directly address the fact intensive question of whether litigation was reasonably foreseeable within hours of the April 17, 2019 vote not only to Commissioner Jones, but to Defendants.  That is, Gypsum must address and give Defendants (and Mr. Jones) an opportunity to respond to whether the disappearance of all text messages on Commissioner Jones' cell phone on April 17, 2019, just hours after the CCBC vote, was done for purposes of destroying evidence that may be relevant or may lead to the discovery of relevant evidence in light of reasonably foreseeable litigation, and whether that conduct is properly imputed to Defendants.  If litigation was foreseeable to Defendants as well as Commissioner Jones on April 17, 2019, the parties must address whether Defendants' failure to issue a litigation hold or preservation notice within hours of the April 17th vote was unreasonable.[8]  If litigation was not reasonably foreseeable immediately following the April 17, 2019 vote, then when did litigation become reasonably foreseeable, was there spoliation of documents after that point in time and, if so, by whom? Generally, if litigation was reasonably foreseeable to Commissioner Jones before it was for Defendants then Gypsum must address what, if any, sanctions should be imposed on Commissioner Jones based on the Court's inherent authority to sanction a non-party and, importantly, when if at all Commissioner Jones' conduct is properly imputed to the County.  These issues are touched on by Gypsum, more than Defendants, but as Gypsum admits, its Motion focused on Mr. Jones and an evidentiary hearing.[9]

---

[8]     The Court scoured the country for a case discussing whether a failure to issue a litigation hold on the day of an event, which might prompt such a hold, properly led to a spoliation finding.  The Court found none.  Given the history of litigation, the proceedings in the U.S. Bankruptcy Court that interrupted the instant litigation, and Commissioner Jones' well publicized, admitted representation of an environmental group that preceded his election to the CCBC, it is hard to imagine that Commissioner Jones, the County, and/or CCBC would not foresee litigation arising from the April 17, 2019 vote.  *See Rockman Company (USA) Inc. v. Nong Shim Company, Ltd.*, 229 F.Supp.3d 1109, 1124-25 (N.D. Cal. Jan. 19, 2017) (discussing related history potentially creating reasonable foreseeability of litigation).  But, assuming litigation was foreseeable, this does not answer whether the failure to act within hours of the April 17, 2019 vote is sanctionable.  Further, if litigation was foreseeable, Defendants did not need to "know" that Commissioner Jones had relevant information on his privately held cell phone in order to act, but only that potentially relevant information should not have been destroyed.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("a party's destruction of evidence qualifies as willful spoliation if the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed") (internal citation omitted).
[9]     Gypsum states in its Reply: "While much of the focus of Gypsum's Motion is focused on Jones' deletion on April 17, 2019, the County's preservation efforts were clearly deficient elsewhere."  ECF No. 65 at 7.

7

C.   Imputed Duty, Reasonable Foreseeability, Legislative Privilege, and Good Faith and Fair Dealing.

Because each of these issues is raised by one or all parties, the Court addresses what has been argued to date.

1.   *Imputed Duty and Reasonable Foreseeability.*

Plaintiff cites *Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 515 n.23 (D. Md. 2009), to support its imputed liability agreement.   The court in *Victor Stanley* considered and then decided that defense counsel was defendants' agents resulting in defendants' liability for its counsel's spoliation of evidence.   *Id. citing*, *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962) (an attorney is a "freely selected agent" such that there was "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client") and, *Rouse v. Lee*, 339 F.3d 238, 249 (4th Cir. 2003) ("[f]ormer counsel's errors are attributable to … [plaintiff] not because he participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency.") (internal citation omitted).   In sum, the court in *Victor Stanley* held spoliation was attributable to the defendants based on an agency relationship between parties and their counsel.   *Id. citing Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 522 n.16 (D. Md. 2009) ("A party may be held responsible for the spoliation of relevant evidence done by its agents); *N.J. Mfrs. Ins. Co. v. Hearth & Home Techs., Inc.*, Case No. 3:06-cv-2234, 2008 WL 2571227, at *7 (M.D. Pa. June 25, 2008) ("A party to a law suit, and its agents, have an affirmative responsibility to preserve relevant evidence.   A [party] ... is not relieved of this responsibility merely because the [party] did not itself act in bad faith and a third party to whom [the party] entrusted the evidence was the one who discarded or lost it.").   Indeed, the court concluded "agency law is directly applicable to a spoliation motion, and the level of culpability of the agent can be imputed to the master."   *Id. citing Nucor Corp. v. Bell*, 251 F.R.D. 191, 198-99 (D.S.C. 2008) (agent's willful alteration or destruction of relevant data on laptop was directly attributable to defendant; *Connor v. Sun Trust Bank*, 546 F.Supp.2d 1360 (N.D. Ga. 2008) (agent's bad faith destruction of email was attributable to defendant) (additional citation omitted).   Here, there is no claim that Commissioner Jones was

8

Defendants' agent; nor does the Court find any legal basis upon which agency principles would apply to a local governmental body such as a board or council and its independently elected officials.

Plaintiff further relies on *Wilson v. Beloit Corp.*, 921 F.2d 765 (8th Cir. 1990), for imputed responsibility.  However, *Beloit* itself relied on the following 1987 Kansas Supreme Court holding: "Appellant readily concedes that the tort of spoliation of evidence is relatively new and so far as we can determine very few states have actually recognized such a tort.  Absent some special relationship or duty arising by reason of an agreement, contract, statute, or other special circumstance, the general rule is that there is no duty to preserve possible evidence for another party to aid that other party in some future legal action against a third party."  *Id*. at 767 *citing Koplin v. Rosel Well Perforators, Inc.*, 734 P.2d 1177 (Kan. 1987).  Distinguishing *Beloit* from the case at bar, the Court notes Nevada rejected an independent tort of spoliation.  *Timber Tech Engineered Bldg. Prods. v. Home Ins. Co.*, 55 P.3d 952 (2002).  However, the Court did locate *Colonies Partners, L.P. v. County of San Bernardino*, Case No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020), in which the plaintiff sued a county employee (a district attorney) together with the county under 42 U.S.C. § 1983.  The content of the employee's personal email accounts and cell phone were at issue.  *Id*. at **3-4.  After discussing other issues, the court in *Colonies Partners* stated: "An entity and employee defendant[] can both be under a duty to preserve, and therefore culpable for spoliation of ESI, even if one or the other is directly responsible for the destruction of evidence."  *Id*. at 4 (collecting cases involving an employee-employer relationship).

One of the cases cited by *Colonies Partners* is a U.S. District Court for the District of Arizona case (in turn citing *Beloit*) that considered whether a non-party, the Arizona Department of Corrections ("ADC"), could be sanctioned for destruction of evidence by its employee-correctional officers.  *Petit v. Smith*, 45 F.Supp.3d 1099 (D. Ariz. 2014).  The court in *Petit* stated: "ADC is not a disinterested third party.  It is responsible for Defendants' training and conduct, and it had complete control over the relevant evidence in this case and over Plaintiff's ability to access that evidence and Defendants' ability to preserve it.  …  Because ADC controls the evidence and who has access to it, and the State is defending this case and will pay any judgment that results from it, the Court cannot conclude that ADC is merely a disinterested third party with no duty to preserve evidence."  *Id*. at

1106.  The court then held: "Given these special circumstances, the Court finds that ADC had a duty to preserve evidence relevant to this case once it knew that litigation was reasonably likely."  *Id.*

Here, independently elected Commissioner Jones was not an employee of the County or the CCBC.  Neither the County nor CCBC had complete control of Mr. Jones' personal cell phone and, while Defendants are not disinterested parties and Defendants and Commissioner Jones could each have duties to preserve, the Court finds the employee-employer relationship distinguishable from the relationship at bar.

The Court found no case in which a local government or local governing body was held responsible for spoliation of records by an independently elected official when the records were held on a device outside the control of that governmental entity.  Nonetheless, with respect to case law discussing special relationships, which may establish a basis for imputed liability especially in light of the Nevada Supreme Court decision in *Comstock*,[10] the Court does rule out that responsibility for Commissioner Jones' actions, if spoliation, could attach to the County or CCBC in this case.[11]  But this issue is one largely of law not in need of an evidentiary hearing.  The importance of this issue, given that the holding may be one of first impression in the Ninth Circuit, requires greater attention.[12]

---

[10]     *Comstock* states "a public record is [not] inherently beyond the control of a governmental entity by virtue of the fact that it exists on a device or server not designated as governmental" and that "[w]hile Lyon County does not provide the subject phones or email accounts, the commissioners themselves are governmental entities, NRS 239.005(5)(a), and their custody of the requested records would satisfy the requirement of legal custody under NRS 239.010(4) … ."  414 P.3d at 323.

[11]     The Court reviewed the holding in *Department of Taxation v. Eighth Judicial District Court*, 466 P.3d 1281, 1285 (Nev. 2020).  The facts and decision do not reach so far as to resolve whether, assuming spoliation of documents on Commissioner Jones' personal cell phone, responsibility for the spoliation is properly imputed to Defendants.

[12]     This issue is not considered under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), but one of imputed liability for spoliation that was insufficiently addressed by the parties.  With respect to Gypsum's 42 U.S.C. § 1983 claim, Plaintiff must establish liability applying the standard established in *Monell*.  The Court further recognizes that for purposes of a "class of one" equal protection claim, Gypsum will have to demonstrate CCBC intentionally treated the company differently than other similarly situated property owners without a rational basis for doing so.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).  Further, the Court reviewed *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1229 (9th Cir. 1994), cited by Defendants for the proposition that isolated statements by a city council member cannot be imputed to the City Council itself for purposes of demonstrating discriminatory intent.  ECF No. 59 at 10 *citing id.*, 17 F.3d at 1239.  However, even if the Court assumes, for purposes of this Order only, that Plaintiff's § 1983 and equal protection claims fail, neither these cases nor the cases cited by Defendants with respect to Plaintiff's "takings" claim address imputed responsibility for spoliation arising in the context of a breach of contract that contained an express good faith provision or an implied covenant of good faith and fair dealing claim.

1

          *2.*       *Legislative Privilege.*

2

        Defendants argue legislative privilege moots the issue of spoliation.  ECF No. 59 at 4, 7.

3

However, whether legislative privilege would apply to *all* of the destroyed texts is not properly

4

presumed by the Court.  *IDX Sys. Corp.*, 464 F.3d at 959 ("because the relevance of destroyed

5

documents cannot be clearly ascertained because the documents no longer exist, a party can hardly

6

assert any presumption of irrelevance as to the destroyed documents") (internal quote marks,

7

brackets, ellipsis, and citation omitted).  That is, no one knows what was contained in the entirety of

8

the documents that disappeared from Commissioner Jones' cell phone hours after the April 17, 2019

9

vote.  Although some of these documents were discovered because others did not suddenly lose all

10

of their texts as Mr. Jones did, this does not resolve this issue.  Indeed, "[i]n the Ninth Circuit,

11

spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the

12

case, and further, that such evidence was adverse to the party that destroyed it."  *Apple Inc.*, 888 F.

13

Supp.2d at 993 ("though neither Apple nor the Court may ever know the contents of any destroyed

14

Samsung emails, the fact that the emails of key Samsung witnesses were among those destroyed

15

permits the reasonable inference that Apple was prejudiced by Samsung's spoliation.").  Therefore,

16

Defendants' legislative privilege argument does not defeat the Court's inquiry.[13]

17

          *3.*       *Breach of Contract and Good Faith and Fair Dealing.*

18

        Defendants cite *Chapman v. Public Utility Dist. No. 1 of Douglas County, Wash.*, 367 F.2d

19

163 (9th Cir. 1966), for the proposition that a breach of contract claim against a governmental entity,

20

also asserting a breach of good faith and fair dealing, must be decided by applying the arbitrary and

21

capricious standard.  However, *Chapman* was not a breach of contract case.  Rather, the case was an

22

eminent domain action that "was subject to judicial review, if at all, only to the extent of deciding

---

23 24 25 26 27 28

[13]      The Court reviewed *Lee v. City of Los Angeles*, 908 F.3d 1175 (9th Cir. 2018).  This decision discusses an equal protection claim in the context of redistricting City of Los Angeles council seats.  With respect to legislative privilege, the court held the privilege extends to state and local officials whose "exercise of legislative discretion should not be inhibited by judicial interference."  *Id.* at 1187 (internal citation omitted).  However, applying the privilege presumed that local officials "had not exceeded the bounds of legislative power and were acting in a field where legislators traditionally have power to act."  *Id.* (citations and internal quote marks omitted).  Thus, while "judicial inquiries into legislative … motivation represent[s] a substantial intrusion" on the privilege, the court recognized there are "circumstances under which the privilege must yield to the need for a decision maker's testimony … ."  *Id.* (internal quote marks and citations omitted).  Here, the Court seeks no testimony at this time.  Thus, the discussion in *Lee* is not germane to the Court's decision.  But, should there be a circumstance where Mr. Jones' testimony is deemed necessary by the Court, the holding in *Lee* does not foreclose the Court's authority  to require such testimony.

whether [] determination of necessity was arbitrary, capricious, or made in bad faith." *Id*. at 167. The decision in *Chapman* is not applicable here.

In *City Council of the City of Reno v. Irvine*, 721 P.2d 371 (Nev. 1986), the issue presented on a writ of mandamus was the City's refusal to issue a liquor license despite a district court order to do so. The Nevada Supreme Court applied the arbitrary and capricious standard and held "[t]he Reno City Council acted well within its powers in denying the license and reverse the order of the district court commanding issuance of the license." *Id*. This was not a breach of contract case.

In fact, neither *Chapman*, nor *City Council* nor other cases cited by Defendants[14] stand for the proposition that a breach of contract claim (as opposed to a claim pertaining to the exercise of authority granted to a county or its board of commissioners) is properly decided applying the arbitrary and capricious standard rather than the state law standard applicable to contract and good faith and fair dealing claims. The Court found several cases in contract based claims against a county, state, or a subdivision thereof were considered based on the application of state law. *Blanck v. Hager*, 360 F.Supp.2d 1137 (D. Nev. 2005) (finding in favor of Washoe County School District, a political subdivision of the State of Nevada, and against the plaintiff on the plaintiff's breach of contract and breach of good faith and fair dealing claims applying Nevada contract law to these claims); *County of Orange v. Tata Consultancy Services LTD*, Case No. SACV 13-683 JLS (JCx), 2014 WL 12603074 (C.D. Cal. Feb. 12, 2014) (in which the court, applying California contract law, rejected the County's motion to dismiss a breach of good faith and fair dealing claim as duplicative of a breach of contract claim because the "allegations plausibly suggest[ed] that the County breached the implied covenant of good faith and fair dealing by consciously and deliberately acting to frustrate Tata America's entitlement to be paid for the work it performed under the Contract"); *General Security Services Corporation v. County of Fresno*, 815 F.Supp.2d 1123 (E.D. Cal. 2011) (in which the court analyzed a breach of contract and breach of covenant of good faith and fair dealing under California contract law). The above case law demonstrates that Defendants' argument regarding

---

[14]     *United States v. 1.33 Acres, in the County of San Luis Obispo*, 9 F.3d 70 (9th Cir. 1993), relied upon by Defendants, is an eminent domain case that does not discuss breach of contract. *Johnson v. District 2 Marine Engineers Beneficial Assoc.*, 857 F.2d 514 (9th Cir. 1998) is not against a county or other public entity.

Plaintiff's breach of contract and breach of good faith and fair dealing fails because these claims are not governed by the arbitrary and capricious standard, but by state contract law. *See* ECF No. 59 at 16.

## III.    Conclusion and Order

The Court is not deciding substantive claims brought by Gypsum against Defendants. The Court is not now deciding whether spoliation sanctions should be awarded and, if so, against whom they should be awarded. The Court only decides whether an evidentiary hearing for purposes of assessing appropriate sanctions should be granted. For the reasons stated above, the Court finds an evidentiary hearing is not warranted at this time. In fact, in order for the Court to consider sanctions arising from spoliation of evidence alleged against Commissioner Jones and sought to be imputed to Defendants, additional briefing is required.

If Gypsum files a motion for sanctions, Gypsum must address what sanctions it seeks against which parties and/or non-party, based on what specific acts, when those acts occurred, and the law supporting the request. All parties and Mr. Jones must address whether litigation was reasonably foreseeable on April 17, 2019 immediately after the CCBC vote that prompted the instant litigation and, if so, by whom. The parties must discuss when litigation became foreseeable if not on April 17th, whether spoliation occurred after the date litigation became foreseeable, and, if so, which parties or non-party is responsible for that spoliation. Imputed responsibility for spoliation, under the circumstances presented here, is likely a matter of first impression in the Ninth Circuit and should not be given short shrift. The parties must address relevance and prejudice as it relates to Gypsum's breach of contract and breach of good faith and fair dealing claims. Only after these issues are briefed is the issue of sanctions one the Court can decide.

Accordingly, IT IS HEREBY ORDERED that Gypsum Resources, LLC's Motion to Convene Evidentiary Hearing for Imposition of Sanctions for Destruction of Evidence (found at ECF Nos. 55 and 56) is DENIED without prejudice.

IT IS FURTHER ORDERED that before the Court will consider whether to enter an order assessing sanctions against any party or non-party, Gypsum will have to file a motion seeking sanctions addressing the issues identified above to which responses and a reply may follow.

DATED this 15th day of November, 2022.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE