# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

GYPSUM RESOURCES, LLC, a Nevada limited liability company, )

              Plaintiff, )

    vs. )

CLARK COUNTY, *et al.*, )

              Defendants. )

CLARK COUNTY, *et al.*, )

              Counter-Claimants, )

    vs. )

GYPSUM RESOURCES, LLC, a Nevada limited liability company, )

              Counter-Defendant. )

Case No.: 2:19-cv-00850-GMN-EJY

**ORDER**

      Pending before the Court is Plaintiff and Counter-Defendant Gypsum Resources, LLC's ("Gypsum's") Partial Motion for Summary Judgment, (ECF No. 38). Defendants and Counter-Claimants Clark County and Clark County Board of Commissioners (collectively, "Clark County") filed a Response, (ECF Nos. 39, 40, 41), to which Gypsum filed a Reply,[1] (ECF No. 50).

---

[1] Gypsum also filed a Notice of Objections to the Evidence Offered in Clark County's Opposition to Gypsum's Motion for Partial Summary Judgment, (ECF No. 51), and a Notice of Objections to the Evidence Offered in the Statement of Undisputed Facts in Support of Clark County's Opposition to Gypsum's Motion for Partial Summary Judgment, (ECF No. 52). The Court considers Gypsum's objections but finds that they do not impact the Court's determination of Gypsum's Motion for Partial Summary Judgment for the reasons set forth below.

Further pending before the Court is Gypsum's Motion for Status Conference to Set Trial and Deadlines, (ECF No. 53). Clark County filed a Response, (ECF No. 57), to which Gypsum filed a Reply, (ECF No. 58).

Further pending before the Court is Clark County's unopposed Motion for Leave to File Excess Pages, (ECF No. 47).

For the reasons discussed below, the Court DENIES in part Gypsum's Motion for Partial Summary Judgment, DENIES Gypsum's Motion for Status Conference to Set Trial and Deadlines,[2] and GRANTS Clark County's Motion for Leave to File Excess Pages.[3]

## I.    BACKGROUND

Gypsum is a Nevada limited liability company and owner of approximately 2,400 acres of real property encompassing Blue Diamond Hill and the Hardie Gypsum Mine located in Clark County, Nevada (the "Gypsum Property"). (Am. Compl. ¶ 1, ECF No. 9). The Clark County Board of Commissioners ("CCBD") is the governing board authorized to conduct business, adopt laws, and adjudicate land use matters on behalf of Clark County. (*Id*. ¶ 2).

### A.    History of the Gypsum Property

In 1990, the United States Congress established the Red Rock Canyon National Conservation Area ("RRCNCA"), thereby designating approximately 200,000 acres of land as a conservation area to be administered by the Bureau of Land Management. (*Id*. ¶ 5). Several years later, the Nevada Legislature enacted the Red Rock Canyon Conservation Area act,

---

[2] Gypsum petitions the Court to convene a status conference to set a trial date and related trial deadlines because "there is going to be a trial, as the pending motions for summary judgment do not dispose of all claims." (Mot. Status Conference 2:15–16, ECF No. 53). This may be true, but the Court's determination on Gypsum's Motion for Partial Summary Judgment and Clark County's separate Motion for Summary Judgment, (ECF No. 35), necessarily shapes what issues will be litigated at trial. Therefore, the Court finds that any status conference to set a trial date and related trial deadlines is premature prior to the Court's determination on the pending motions for summary judgment and partial summary judgment.

[3] The Court grants Clark County's Motion for Leave to file Excess Pages given that Gypsum does not oppose the Motion.

1   restricting land use for property surrounding the RRCNCA. (*Id*. ¶ 6).  Clark County

2   subsequently established the Red Rock Design Overlay District, further restricting how land

3   surrounding the RRCNCA could be used and developed. (*Id*. ¶ 7).

4   In 2003, Gypsum acquired the Gypsum Property with the intention of developing the

5   Gypsum Property as a master-planned residential community. (*Id*. ¶ 8).  At the time of the

6   purchase, the Gypsum Property was zoned "RU," designating that one home could be built

7   every two acres throughout the property. (*Id*. ¶ 10).  Gypsum intended to submit a zoning

8   variance request to the CCBD to develop its residential community, but before it could do so

9   the Nevada legislature enacted SB 358, a bill which precluded Gypsum from seeking a zoning

10   variance. (*Id*. ¶¶ 10–16).  Coinciding with the enactment of SB 358 was the passage of

11   Ordinance 2914 by Clark County, which expanded the Red Rock Design Overlay District to

12   prohibit land use applications to increase the zoning density for properties within the district.

13   (*Id*. ¶ 16).

14   **B.   Preceding Litigation**

15   In 2005, Gypsum filed suit in this court against the State of Nevada and Clark County,

16   challenging the constitutionality of SB 358 and Ordinance 2914. (*Id.* ¶¶ 18–20).  In 2010,

17   Gypsum and Clark County resolved the litigation by entering into a written Stipulation and

18   Settlement Agreement, (the "Settlement Agreement"). (*Id.* ¶ 21).  The Settlement Agreement

19   required Clark County and CCBD to amend the Clark County Code to allow an exception to

20   the "Red Rock Design Overlay District," in addition to authorizing Gypsum to submit a Major

21   Project Application for a master-planned residential development with "residential densities

22   higher than those allowed in the holding RU zoning . . . ." (*Id.* ¶ 22–23).  Moreover, the

23   Settlement Agreement instituted several mandatory conditions that any subsequent Major

24   Project Application proposed by Gypsum would have to comply with.  Two of these conditions

25   are of note.  First, "[t]he parties agree that any Major Project Application that seeks increased

1   density (residential) or intensity (non-residential) must propose a primary access to and from

2   the East." (Settlement Agreement 54:22–24, Ex. D to MSJ, ECF No. 35-4).  This condition

3   would later become a requirement mandating that Gypsum obtain a right-of-way approval from

4   the Bureau of Land Management ("BLM") to construct a road before any of their Major Project

5   Applications would be approved. (12/05/2018 BCC Agenda at 204, Ex. DD to Clark County

6   MSJ, ECF No. 36-2).  Second, and related to the first condition, the Settlement Agreement

7   mandated that any approved primary access "shall not connect to State Route 159." (Settlement

8   Agreement 55:1–3, Ex. D to MSJ).

9          The Settlement Agreement further provided that Clark County and CCBD would process

10  Gypsum's subsequent Major Project Application in "good faith."  (*Id.* ¶ 24).  Specifically, the

11  Settlement Agreement stated that, "[t]he County agrees that it will process the Major Project

12  Application under the Major Projects in good faith.  Gypsum understands that the County, by

13  this Agreement, cannot and is not committing to approval of any particular Major Project

14  and/or any particular densities or uses." (Settlement Agreement 54:17–20, Ex. D to MSJ).

15         As relevant here, Gypsum contends that Clark County subsequently engaged in a pattern

16  of obstruction and delay after entering into the Settlement Agreement to prevent Gypsum from

17  developing the Gypsum Property. (Gypsum Partial Mot. Summ. J. ("MSJ") 20:11–21, ECF No.

18  38).  Gypsum thereby argues that Clark County violated the provision of the Settlement

19  Agreement which guaranteed that Clark County would process Gypsum's Major Project

20  Application(s) in "good faith." (*Id.*)

21  **II.   LEGAL STANDARD**

22         The Federal Rules of Civil Procedure provide for summary adjudication when the

23  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

24  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

25  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

1  may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

2  (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on

3  which a reasonable fact-finder could rely to find for the nonmoving party.  *See id.*  "The amount

4  of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

5  judge to resolve the parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral*

6  *Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.

7  253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

8  inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

9  favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United*

10  *States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary

11  judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*,

12  477 U.S. 317, 323–24 (1986).

13         In determining summary judgment, a court applies a burden-shifting analysis.  "When

14  the party moving for summary judgment would bear the burden of proof at trial, it must come

15  forward with evidence which would entitle it to a directed verdict if the evidence went

16  uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

17  the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

18  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

19  contrast, when the nonmoving party bears the burden of proving the claim or defense, the

20  moving party can meet its burden in two ways: (1) by presenting evidence to negate an

21  essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

22  party failed to make a showing sufficient to establish an element essential to that party's case

23  on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–

24  24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and

25  the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 159–60 (1970).

   If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp*., 477 U.S. at 324.

   At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

   Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration

1   that, for specified reasons, it cannot present facts essential to justify its opposition, the court

2   may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

3   declarations or to take discovery; or (3) issue any other appropriate order."  To obtain relief

4   under Rule 56(d), the nonmovant must show "(1) that [he or she] ha[s] set forth in affidavit

5   form the specific facts that [he or she] hope[s] to elicit from further discovery, (2) that the facts

6   sought exist, and (3) that these sought-after facts are 'essential to resist the summary judgment

7   motion." *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

8   **III.   <u>DISCUSSION</u>**

9       Gypsum's Amended Complaint asserts the following claims: (1) violation of its rights

10  under the Fifth Amendment's Takings Clause; (2) violation of its Procedural and Substantive

11  Due Process rights under the Fourteenth Amendment; (3) violation of its rights under the Equal

12  Protection Clause of the Fourteenth Amendment; (4) *Monell* liability pursuant to 42 U.S.C. §

13  1983; (5) a separate, or stand-alone, claim for 42 U.S.C. § 1983 liability; (5) breach of contract;

14  (6) breach of the implied covenant of good faith and fair dealing; (7) a petition for a writ of

15  mandamus; and (8) injunctive relief. (*See generally* Am. Compl., ECF No. 9).

16      By the instant motion, however, Gypsum moves for partial summary judgment only

17  as to its Fourteenth Amendment Procedural and Substantive Due Process claim. (*See generally*

18  Gypsum Partial MSJ).  The Court discusses this claim below, beginning with an analysis of

19  whether Clark County violated Gypsum's Procedural Due Process rights by allegedly failing to

20  adhere to terms of the Settlement Agreement which stipulated that Clark County would process

21  Gypsum's Major Project Application "in good faith."

22  **A. Procedural Due Process**

23      Assessment or Procedural Due Process claims proceed by first determining whether the

24  plaintiff was deprived a liberty or property interest by the government. *Kentucky Dep't of Corr.*

25  *v. Thompson*, 490 U.S. 454, 460 (1980).  "[I]t has long been settled that a contract can create a

constitutionally protected property interest." *San Bernardino Physicians' Services Medical Group, Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, at 1407-1408 (9th Cir. 1987).  However, "not every contract with a governmental entity creates a property interest protected under the Due Process Clause." *Oceanside Golf Institute, Inc. v. City of Oceanside*, 876 F.2d 897, 897 (9th Cir. 1989).   As posited by the United States Court of Appeals for the Second Circuit, the operative question then becomes: "[W]hat is necessary to elevate a mere contract right to the level of a protectable entitlement[?]" *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994).

Here, Gypsum's expectation is derived from the express terms of the Settlement Agreement.  (Gypsum Partial MSJ 20:11–21).  Thus, to determine whether Gypsum has a constitutionally protected property interest, the Court must look to the terms of the Settlement Agreement governing the process of its Major Project Application(s). *Cf. Clukey v. Town of Camden*, 717 F.3d 52, 57–59 (1st Cir.2013) (finding a protected property interest where the CBA between the defendant municipality and the plaintiff's union stated that laid-off employees had a right to be recalled to their former positions within a year of being laid off).  The operative provision relied on by Gypsum states:

> The County agrees that it will process the Major Project Application under the Major Projects in good faith.  Gypsum understands that the County, by this Agreement, cannot and is not committing to approval of any particular Major Project and/or any particular densities or uses.

(Settlement Agreement 6:22–26, Ex. D to MSJ).

Although written as a single provision, the paragraph above contains two separate and distinct guarantees.  The first sentence provides that Gypsum will receive a "good faith," or fair process.  The second asserts that Clark County maintains full discretion to approve or deny Gypsum's Major Project Application.  Here, Gypsum contends its vested property interest is derived from the first rather than the second sentence.  For the reasons set

1   forth below, however, the Court finds this sentence fails to provide Gypsum with a vested

2   property interest.[4]

3         At its core, Gypsum's argument is that it has a protected property interest in the process

4   by which Clark County reviews its Major Project Application.  In effect, Gypsum claims a

5   vested property interest in the means by which its Major Project Application is considered,

6   rather than the end result concerning whether it is approved.  Thus, Gypsum's claimed

7   entitlement for a "fair process" is no more than a claimed entitlement to process itself.

8   However, "'[p]roperty' cannot be defined by the procedures provided for its deprivation any

9   more than can life or liberty." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

10  Indeed, "[p]rocess is not an end in itself.  Its constitutional purpose is to protect a substantive

11  interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461

12  U.S. 238, 250 (1983).

13        Detailed and extensive procedural requirements may be relevant as to whether a separate

14  substantive property interest exists, but the procedures themselves cannot constitute the

15  property interest. *See Shanks v. Dressel*, 540 F.3d 1082, 1092 (9th Cir. 2008) ("Absent a

16  substantive property interest in the outcome of the procedure, Logan Neighborhood is not

17  constitutionally entitled to insist on compliance with the procedure itself."); *Robbins v. U.S.*

18  *Bureau of Land Management*, 438 F.3d 1074, 1085 (10th Cir. 2006) ("However, it is well

19  established that 'an entitlement to nothing but procedure' cannot be 'the basis of a property

20

21  _____

22  [4] The Court notes that even if Gypsum alternatively contended it had a vested property interest under the second
    sentence, this argument would still fail.  Specifically, the provision expressly states that Clark County maintained

23  the discretion to ultimately accept or deny Gypsum's Major Project Application. (*Id.*).  "Because the
    government's land zoning officials retain discretion to grant or deny an application for rezoning, [Gypsum] has

24  no protected entitlement to, and thus no property interest in, a change in zoning or the process to obtain a desired
    change in zoning." *Gypsum Resources, LLC v. Guinn*, No. 2:05-cv-0583, 2008 WL 872835, at *5 (D. Nev. Mar.

25  27, 2008); *see Nunez v. City of Los Angeles*, 147 F.3d 867, 873 n.8 (9th Cir. 1988) (holding state law creates a
    constitutionally protected property interest where there are significant limitations on a decision maker's
    discretion).

1   interest.'") (quoting *Town of Castle Rock, Colo v. Gonzalez*, 545 U.S. 748, 749 (2005));

2   *Richardson v. Twp. of Brady*, 218 F.3d 508, 517–18 (6th Cir. 2000) (holding that a plaintiff

3   "can have no protected property interest in the procedure itself"); *Swartz v. Scruton*, 964 F.2d

4   607, 610 (7th Cir. 1992) ("Thus, Swartz's asserted legitimate claim of entitlement to process—

5   the 'method'—by which his merit pay increase is determined is not a constitutionally protected

6   property interest.").  Therefore, Gypsum's "right," pursuant to the Settlement Agreement is not

7   the kind of right to which a property interest may attach, regardless of the expense that these

8   proceedings may entail, and the consequences of a negative outcome.[5]  Because Gypsum has

9   not identified a viable property interest protected by Procedural Due Process, it cannot

10  demonstrate that they have been deprived of such an interest without due process.  Therefore,

11  Gypsum's Procedural Due Process claim fails as a matter of law.

12  **B.  Substantive Due Process**

13          To allege a violation of the Fourteenth Amendment's Substantive Due Process Clause, a

14  plaintiff must show that a state actor has deprived the plaintiff of a constitutionally protected

15  interest in life, liberty, or property. *See Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008).

16  Substantive Due Process protection is usually reserved for the vindication of fundamental

17  rights, such as matters relating to marriage, family, and procreation. *See Albright v. Oliver*, 510

18  U.S. 266, 272 (1994).  Thus, where, as here, a plaintiff relies on Substantive Due Process to

19  challenge governmental actions that do not impinge on fundamental rights, the court is not

20  required to find that the defendant's actions actually advanced their stated purposes; the court

21  must 'merely look to see whether the government could have a legitimate reason for acting as it

22  did." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1262 (9th Cir. 1994).

23          Substantive Due Process can be used to address arbitrary governmental interference that

24

25

---

[5] For the same reason, Gypsum's contention that it has a protectable property interest to a "good faith" process
under NRS § 278A.520(2) also fails. (Gypsum Reply Partial MSJ 5:24–26, ECF No. 50).

1    has no reasonable justification. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998);

2    *Stamas v. Cnty. of Madera*, 795 F. Supp. 2d 1047, 1071 (E.D. Cal. 2011).  The Supreme Court

3    has explained that a governmental action will violate Substantive Due Process if it is "clearly

4    arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or

5    general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926);

6    *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 541 (2005).  Traditionally, courts have held that a

7    Substantive Due Process claim cannot be used to vindicate a constitutional right in a 42 U.S.C.

8    § 1983 action if the plaintiff's claim could be analyzed under another explicit textual

9    constitutional source. *See, e.g., Graham v. Connor*, 490 U.S. 386, 394–95 (1989) (determining

10   that Fourth Amendment rather than Substantive Due Process should be used to analyze

11   excessive force claims); *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (finding

12   that because the First Amendment explicitly covers employment termination case, First

13   Amendment and not Substantive Due Process should guide analysis).  However, in *Lingle v.

14   Chevron U.S.A., Inc.*, the Supreme Court contrasted the Takings Clause, which "presupposes

15   that the government has acted in pursuit of a valid public purpose" with "government action

16   [that] is found to be impermissible-for instance because it . . . is so arbitrary as to violate due

17   process[,]" which "[n]o amount of compensation can authorize." 544 U.S. at 543.  Following

18   *Lingle*, the Ninth Circuit explained in *Crown Point Development, Inc. v. City of Sun Valley*, that

19   "the Fifth Amendment w[ill] preclude a due process challenge only if the alleged conduct is

20   actually covered by the Takings Clause." 506 F.3d 851, 855 (9th Cir. 2007).

21          Since *Crown Point*, the Ninth Circuit has found that the Fifth Amendment does not

22   automatically preempt a Substantive Due Process claim that alleges a defendant's land use

23   action or regulation lacked any substantial relation to public health, safety, or general welfare.

24   *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 960 (9th Cir. 2011); *Crown

25   Point*, 506 F.3d at 856.  In light of these decisions, a Substantive Due Process claim

challenging a wholly illegitimate land use action or regulation is not foreclosed by the Takings Clause. *See Colony Cove*, 640 F.3d at 960; *Crown Point*, 506 F.3d at 852–53.

Here, Gypsum moved for summary judgment only as to it's Fourteenth Amendment Due Process claims even though it separately alleges a Fifth Amendment Takings claim. (*See generally* Gypsum Partial MSJ); (Am. Compl.).  If the Court separately finds that Gypsum states a legitimate Takings Claim in its analysis of Clark County's Motion for Summary Judgment, (ECF No. 35), then any present determination of Gypsum's Substantive Due Process claim would be preempted by its Takings claim.  Therefore, any analysis of the merits of Gypsum's Substantive Due Process claim is premature prior to the Court's separate decision on Gypsum's Takings Claim.  Accordingly, the Court defers on examining Gypsum's Fourteenth Amendment Substantive Due Process claim at this time.  The Court will address Gypsum's Substantive Due Process claim with Clark County's Motion for Summary Judgment.

Accordingly, Gypsum's Motion for Partial Summary Judgment as to its Fourteenth Amendment Procedural Due Process claim is DENIED.  The Court otherwise DEFERS ruling on Gypsum's Fourteenth Amendment Substantive Due Process claim.

///
///
///
///
///
///
///
///
///
///

1

### IV.    <u>CONCLUSION</u>

2

     **IT IS HEREBY ORDERED** that Gypsum's Motion for Partial Summary Judgment,

3

(ECF No. 38), is **DENIED in part**.

4

     **IT IS FURTHER ORDERED** that Gypsum's Motion for Status Conference to Set

5

Trial and Deadlines, (ECF No. 53), is **DENIED**.

6

     **IT IS FURTHER ORDERED** that Clark County's Motion for Leave to File Excess

7

Pages, (ECF No. 47), is **GRANTED**.

8

     **DATED** this _ 23 _ day of January, 2023.

9

10

                                      _____

11

                                      Gloria M. Navarro, District Judge

                                      UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25