# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| GYPSUM RESOURCES, LLC, a Nevada limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 2:19-cv-00850-GMN-EJY |
| vs. | ) ) | **ORDER** |
| CLARK COUNTY, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |
| CLARK COUNTY, *et al.*, | ) ) | |
| Counter-Claimants, | ) ) | |
| vs. | ) ) | |
| GYPSUM RESOURCES, LLC, a Nevada limited liability company, | ) ) ) | |
| Counter-Defendant. | ) ) | |

Pending before the Court is Plaintiff and Counter-Defendant Gypsum Resources, LLC's ("Gypsum's") Motion for Summary Judgment, (ECF No. 35). Defendants and Counter-Claimants Clark County and Clark County Board of Commissioners (collectively, "Clark County") filed a Response, (ECF No. 42), to which Gypsum filed a Reply, (ECF No. 48). Following a review of the parties briefing, the Court ordered supplemental briefing. (*See* Min. Order, ECF No. 88). Clark County filed a Supplemental Brief, (ECF No. 97), Gypsum filed a Supplemental Response, (ECF No. 103), and Clark County filed a Supplemental Reply, (ECF No. 108).

Further pending before the Court is Gypsum's Partial Motion for Summary Judgment,

(ECF No. 38).  Clark County filed a Response, (ECF Nos. 39, 40, 41), to which Gypsum filed a Reply, (ECF No. 50).

Further pending before the Court is Gypsum's Motion to Supplement its Opposition to Clark County's Motion for Summary Judgment and Statement of Undisputed Facts in Support of Gypsum's Partial Motion for Summary Judgment, (ECF No. 119).  Clark County filed a Response, (ECF No. 128), to which Gypsum filed a Reply, (ECF No. 130).

For the reasons discussed below, the Court GRANTS Clark County's Motion for Summary Judgment, DENIES Gypsum's Motion for Partial Summary Judgment, and DENIES Gypsum's Motion to Supplement its Opposition to Clark County's Motion for Summary Judgment and Statement of Undisputed Facts in Support of Gypsum's Partial Motion for Summary Judgment.[1]

## I.   BACKGROUND

Gypsum is a Nevada limited liability company and owner of approximately 2,400 acres of real property encompassing Blue Diamond Hill and the Hardie Gypsum Mine located in

---

[1] Gypsum's Motion to Supplement its Opposition is predicated on the Magistrate Judge's Order, (ECF No. 117), granting in part and denying in part its Motion for Imposition of Sanctions against Commissioner Jones for Fraud Upon the Court and Destruction of Evidence, (ECF No. 82).  Gypsum contends the Magistrate Judge made "significant findings, many of which bear directly on the substance of [Clark County's] Motion for Summary Judgment." (Mot. Supplement Opposition 2:1–3, ECF No. 119).  Specifically, Gypsum raises the Magistrate Judge's conclusion that Commissioner Jones "intentionally destroyed evidence relating to Gypsum's claims and that the destroyed evidence 'would have been unfavorable to [Commissioner] Jones and the County.'" (Reply Mot. Supplement Opposition 3:6–8, ECF No. 130).  Local Rule 7-2(g) provides "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause."  The Court disagrees with Gypsum that the Magistrate Judge's findings of fact or conclusions of law provides sufficient good cause warranting supplementation of pending briefs.  Here, the Magistrate Judge's sanctions ruling was a determination of a non-dispositive matter and therefore the Court's review is governed by the standard set forth in Rule 72(a) of the Federal Rules of Civil Procedure. *Grimes v. City & County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) (Rule 37); *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747–48 (9th Cir. 1990) (Rule 11).  In reviewing a non-dispositive order entered by a magistrate judge, the court determines whether the order was "clearly erroneous or contrary to law." *Gimes*, 951 F.2d at 241; Fed. R. Civ. P. 72(a).  Thus, the Magistrate Judge's findings are non-binding and remain subject to review by the undersigned.  And to this end, an Objection/Appeal of the Magistrate Judge's Order was recently filed. (Obj., ECF No. 125).  Therefore, while the Court considers the Magistrate Judge's Order and the reasoning therein, it does not find that supplementation is warranted based on the Order.  Accordingly, Gypsum's Motion to Supplement its Opposition is DENIED.

1   Clark County, Nevada (the "Property"). (Am. Compl. ¶ 1, ECF No. 9).  The Clark County

2   Board of Commissioners ("CCBC") is the governing board authorized to conduct business,

3   adopt laws, and adjudicate land-use matters on behalf of Clark County. (*Id*. ¶ 2).

### A.    History of the Property

5       In 1990, the United States Congress established the Red Rock Canyon National

6   Conservation Area ("RRCNCA"), thereby designating approximately 200,000 acres of land as

7   a conservation area to be administered by the Bureau of Land Management ("BLM"). (*Id*. ¶ 5).

8   Several years later, the Nevada Legislature enacted the Red Rock Canyon Conservation Area

9   Act, restricting land use for property surrounding the RRCNCA. (*Id*. ¶ 6).  Clark County

10   subsequently established the Red Rock Design Overlay District, further restricting how land

11   surrounding the RRCNCA could be used and developed. (*Id*. ¶ 7).

12       In 2003, Gypsum acquired the Property with the intention of developing it as a master-

13   planned residential community. (*Id*. ¶ 8).  Gypsum's principal, James. M. Rhodes ("Mr.

14   Rhodes"), had previously developed master-planned residential communities. (*Id*.).  At the time

15   of the purchase, the Property was zoned "RU," designating that one home could be built every

16   two acres throughout the property. (*Id*. ¶ 10).  Gypsum intended to submit a zoning variance

17   request to the CCBC to develop its residential community, but before it could do so the Nevada

18   Legislature enacted Senate Bill 358 ("SB 358"), which precluded Gypsum from seeking a

19   zoning variance. (*Id*. ¶¶ 10–16).  Around the same time, Clark County passed Ordinance 2914,

20   which expanded the amount of land which fell within the  Red Rock Design Overlay District.

21   (*Id*. ¶ 16).

### B.  Preceding Litigation

23       In 2005, Gypsum sued the State of Nevada and Clark County in this Court to challenge

24   the constitutionality of SB 358 and Ordinance 2914. (*Id*. ¶¶ 18–20).  This litigation resulted in

25   the Court finding SB 358 unconstitutional under the State of Nevada Constitution. *See*

*generally Gypsum Res., LLC v. Masto*, 672 F. Supp. 2d 1127 (D. Nev. 2009); *Attorney Gen. v. Gypsum Res.*, 294 P.3d 404 (Nev. 2013) (en banc).  In 2010, Gypsum and Clark County entered into a written Stipulation and Settlement Agreement (the "Settlement Agreement"). (*Id.* ¶ 21). The Settlement Agreement authorized Gypsum to submit a major project application for a master-planned residential development. (*Id.* ¶ 22–23).

The Settlement Agreement further instituted several mandatory conditions in reviewing Gypsum's subsequent major project application.  Two of these conditions are noteworthy. First, "[t]he parties agree[d] that any [m]ajor [p]roject [a]pplication that seeks increased density (residential) or intensity (non-residential) must propose a primary access to and from the East." (Settlement Agreement 7:22–24, Ex. D to Clark County MSJ, ECF No. 35-4)  The parties elaborated that "[a]lthough the exact location of the primary access to the East will be determined" throughout Gypsum's subsequent Major Project Application process, it was agreed that "the primary access shall not connect to State Route 159" and that Gypsum may only temporarily use State Route 159 during the construction of the initial phase of development of any approved major project and for emergency purposes. (*Id*. 8:1–3, Ex. D to Clark County MSJ).  Second, the Settlement Agreement mandated that any approved primary access "shall not connect to State Route 159." (*Id*., Ex. D to Clark County MSJ).

Additionally, Settlement Agreement provided that Clark County and the CCBC would process Gypsum's subsequent Major Project Application in "good faith." (*Id*. 7:18, Ex. D to Clark County MSJ).  Specifically, the Settlement Agreement noted, "The County agrees that it will process the Major Project Application under the Major Projects in good faith.  Gypsum understands that the County, by this Agreement, cannot and is not committing to approval of any particular Major Project and/or any particular densities or uses." (*Id*. 7:17–20, Ex. D to Clark County MSJ).

/ / /

### C.  Gypsum's Subsequent Major Project Application

On June 29, 2011, Gypsum submitted an initial Concept Plan ("2011 Concept Plan") for the Property. (*See generally* Gypsum 2011 Concept Plan, Ex. E to Clark County MSJ, ECF No. 35-4).  The 2011 Concept Plan provided that the project area consisted of approximately 2,465.5 acres owned by Gypsum and was "designated as R-U (Rural Open and Land) Zone." (*Id*. at 72, Ex. E to Clark County MSJ).  The 2011 Concept Plan defined the Property as "generally bounded by, but outside of the Red Rock Canyon National Conservation Act to the north, west, and south." (*Id*. at 72, Ex. E to Clark County MSJ).  The 2011 Concept Plan further explained that "one of the primary issues facing the area is the continuing increasing traffic volume on State Route 159 and the impact of traffic on the . . . environment and experience." (*Id*. at 137, Ex. E to Clark County MSJ).  To avoid this issue, the 2011 Concept Plan stated, "There will be no primary access to State Route 159." (*Id.* at 137, Ex. E to Clark Couty MSJ).

The 2011 Concept Plan submitted density proposals that exceeded the permissible density limits for R-U designated land, thereby requiring a zoning variance. (*Id*. at 136, Ex. E to MSJ).  Then Clark County Commissioner Susan Brager ("Commissioner Brager") acknowledged the CCBC expected Gypsum would seek increased density based on the Settlement Agreement. (Commissioner Brager Dep. 73:4–22, Ex. 4 to Resp. Clark County MSJ, ECF No. 43-5).  Under Clark County Code § 30.20.30, the 2011 Concept Plan was a Major Project application based on its size and scope. *See* Major Project Application Processing, *Clark County Unified Development Code*, https://files.clarkcountynv.gov/clarknv/Title30_DevelopmentCode_2021_3.pdf (last updated May 15, 2017).  Clark County Code § 30.20.30 requires all Major Projects to receive the CCBC's discretionary approval on the following items: (1) Concept Plan; (2) Public Facilities Needs Assessment ("PFNA") Plan; (3) Specific Plan; (4) Development Agreement; and (5) Zone Changes. (*Id*.).

1     Gypsum's 2011 Concept Plan was subsequently placed on the CCBC's August 17, 2011,

2   public meeting agenda. (*See generally* 08/17/2011 CCBC Agenda Sheet, Ex. G to Clark County

3   MSJ, ECF No. 35-4).  Clark County's staff submitted a report and recommendation before this

4   meeting. (*Id*., Ex. G to Clark County MSJ).  The staff report noted that Gypsum and the BLM

5   were negotiating an ongoing land transfer proposal, under which Gypsum would exchange 846

6   acres for 992 acres of BLM land. (*Id.* at 187, Ex. G to Clark County MSJ).  The staff report

7   ultimately recommended approving Gypsum's 2011 Concept Plan "with a reduction in the

8   number of residences as determined by the [CCBC]." (*Id*. at 190, Ex. G to Clark County MSJ).

9     At the hearing, members of the public expressed their concern that Gypsum's Major

10  Project Application would have adverse environmental, recreational, and economic effects.

11  (*See generally* 08/17/2011 Transcript, Ex. H to Clark County MSJ, ECF No. 35-4).  To

12  alleviate these concerns, Clark County Deputy District Attorney Rob Warhola ("Mr. Warhola")

13  clarified that Gypsum's 2011 Concept Plan was only the "initial step of the major project

14  process." (08/17/2011 Transcript at 110, Ex. H to Clark County MSJ).  He elaborated that

15  "[a]pproving a concept plan" is not synonymous with "approving a major project." (*Id*., Ex. H

16  to Clark County MSJ).  Mr. Warhola further explained that approval of the 2011 Concept Plan

17  "does not create an entitlement" to the plan for Gypsum. (*Id.*, Ex. H to Clark County MSJ).

18  Nonetheless, Mr. Warhola noted that, under his interpretation of the Settlement Agreement's

19  "good faith" provision, public opposition to Gypsum's 2011 Concept Plan, was an insufficient

20  reason to deny the plan on its own. (*Id*. at 112, Ex. H to Clark County MSJ).

21    The commissioners then discussed the merits of the 2011 Concept Plan. (*See generally*

22  *id.*, Ex. H to Clark County MSJ).  The commissioners' discussion primarily hinged on the

23  amount of land density Gypsum would be permitted, and whether Gypsum would need to

24  obtain right-of-way approval from the BLM for primary access to the property prior to

25  proceeding forward with its Major Project Application. (*Id.*, Ex. H to Clark County MSJ).

1

### D.  Conditional Approval of the 2011 Concept Plan

2      On August 25, 2011, Clark County issued a Notice of Final Action approving Gypsum's

3   2011 Concept Plan. (*See generally* Notice of Final Action, Ex. I to Clark County MSJ, ECF No.

4   36-1).  Gypsum was permitted a "[m]aximum average density of 2.5 units per acre overall" and

5   was required to obtain "right-of-way approval from the BLM for primary access" before Clark

6   County would approve its specific plan. (*Id*. at 2–3, Ex. I to Clark County MSJ).  The Notice of

7   Final Action further provided that Gypsum was not permitted "access onto" State Route 159.

8   (*Id*. at 2, Ex. I to Clark County MSJ).  Around this time, then-Commissioner Steve Sisolak

9   ("Commissioner Sisolak") privately expressed to a colleague that he believed the average

10  density of 2.5 units per acre was not "reasonable" under the Settlement Agreement when

11  considering that "all other major projects have [an average] density of five or more per acre."

12  (Commissioner Sisolak Public Hearing Texts at 2, Ex. 15 to Resp. Clark County MSJ, ECF No.

13  43-16).  Commissioner Sisolak further conveyed his belief that "a lot of this is about [Mr.]

14  Rhodes." (*Id.*, Ex. 15 to Resp. Clark County MSJ).

15     On September 30, 2011, Gypsum applied for a waiver of the conditions regarding its

16  denial of access to State Route 159 and the BLM right-of-way approval. (*See generally*

17  09/30/2011 Chris Kaempfer Correspondence, Ex. J to Clark County MSJ, ECF No. 36-1).

18  Gypsum asserted that the categorical bar from access to State Route 159 violated the Settlement

19  Agreement's provisions stating that "Gypsum may utilize access from State Route 159 for

20  temporary purposes during construction of the initial phase of development" and for emergency

21  safety purposes. (*Id*. at 3, Ex. J to Clark County MSJ).

22     Additionally, Gypsum requested that the BLM right-of-way approval—rather than being

23  mandated as a condition precedent for its fledgling Major Project application to proceed—be

24  obtained at a later stage in the process. (*Id* at 3, Ex. J to Clark County MSJ).  Department of

25  Comprehensive Planning Director Nancy Amudsen ("Director Amudsen") later agreed that this

1    modification would track the orderly process for Major Project Applications requiring a

2    roadway right-of-way. (Director Amudsen Dep. 127:7–128:8, Ex. 10 to Resp. Clark County

3    MSJ, ECF No. 43-11).  And Department of Comprehensive Planning Manager Sami R. Real

4    ("Manager Real") later recommended that the right-of-way approval condition be pushed back

5    in Gypsum's application process, from being required prior to the approval of the Specific Plan

6    to after Gypsum's Public Facilities Needs Assessment ("PFNA")/Specific Plan Process.

7    (Manger Real Recommendation at 1, Ex. 17 to Resp. Clark County MSJ, ECF No. 43-18).

8        Gypsum's waiver request was subsequently placed on the CCBC's November 16, 2011,

9    agenda sheet. (*See generally* 11/16/2011 CCBC Agenda Sheet, Ex. K to Clark County MSJ,

10   ECF No. 35-5). Before the November 16 meeting, Clark County staff recommended approving

11   Gypsum's requested waiver regarding access to State Route 159 and denying its request to

12   delay seeking BLM right-of-way approval. (*Id*. at 3, Ex. K to Clark County MSJ).  Gypsum,

13   however, withdrew the application for waiver of conditions before it could be heard by the

14   CCBC.  According to Gypsum, it did so because Commissioner Brager asked Gypsum to

15   incorporate the waiver of conditions into the same hearing to be scheduled for Gypsum's

16   Specific Plan and PFNA. (Ron Krater Dep. 138:3–25, 325:16–327:10, Ex. 18 to Resp. Clark

17   County MSJ, ECF No. 43-19).

18       In contrast, Clark County maintains that Gypsum withdrew its Major Project application

19   so Gypsum could work with the BLM on the ongoing land exchange. (Clark County Statement

20   Undisputed Facts ¶ 23, ECF No. 35-2).  In support of its contention, Clark County points to a

21   waiver application later submitted by Gypsum stated that "it was decided jointly by Gypsum []

22   and Clark County leadership to pause the Major Projects Review Process while [Gypsum]

23   pursue[d/s] a possible land exchange." (Gypsum 2018 Justification Letter at 5, Ex. 40 to Resp.

24   Clark County MSJ, ECF No. 43-41)  On January 21, 2013, "the CCBC voted to approve a

25   resolution supporting the exploration of a potential land exchange between" Gypsum and the

1   BLM. (*Id*. at 5, Ex. 40 to Resp. Clark County MSJ).  And on February 18, 2013, the Nevada

2   Legislature introduced Nevada Senate Bill 159, declaring the Legislature's support for a land

3   exchange near the RRCNA area, which was later signed into law on May 23, 2013. (*Id*. at 5,

4   Ex. 40 to Resp. Clark County MSJ); *see* LegiScan, Nevada Senate Bill 159, (last visited May 4,

5   2023), https://legiscan.com/NV/bill/SB159/2013.

6           Despite Clark County's representation, Gypsum posits that the land exchange was the

7   result of a concerted effort by the CCBC to preserve a portion of the Property as open space for

8   the benefit of the public by pressuring Gypsum, and persuading the BLM, to agree to a land

9   exchange. (Commissioner Sisolak Dep. 32:3–33:5, Ex. 19 to Resp. Clark County MSJ, ECF

10  No. 43-20); (Commissioner Brager Dep. 42:13–23, 33:11–17, Ex. 4 to Resp. Clark County

11  MSJ).  According to Jay Brown ("Mr. Brown"), Gypsum's counsel and an individual with

12  extensive experience dealing with the CCBC, the idea for the land exchange originated with the

13  CCBC, specifically Commissioner Brager. (Mr. Brown Dep. 56:1–58:25, Ex. 20 to Resp. Clark

14  County MSJ, ECF No. 43-21).  Email evidence shows that Commissioner Brager independently

15  contacted the BLM about a potential land exchange. (Commissioner Brager Email at 2, Ex. 21

16  to Resp. Clark County MSJ, ECF No. 43-22).  And Commissioner Brager acknowledged that

17  she was dedicated to persuading the BLM to authorize a land exchange. (Commissioner Brager

18  Dep. 33:1–18, Ex. 4 to Resp. Clark County MSJ).  Nevertheless, in 2015, after years of

19  negotiation, the BLM ultimately declined any land exchange because the history of mining

20  activity on the Property rendered it unsuitable for an exchange. (Ron Krater Dep. 153:13–

21  156:12, Ex. 18 to Resp. Clark County MSJ).

22          **E.  Alleged Expiration of Gypsum's 2011 Concept Plan & Non-Payment of Fees**

23          In 2016, following the conclusion of the land exchange with the BLM, Gypsum intended

24  to resume the Major Project application it began with its 2011 Concept Plan.  But the

25  Department of Comprehensive Planning contended that Gypsum had to submit a new concept

1   plan because a substantial amount of time had elapsed, and Gypsum's 2011 Concept Plan

2   expired. (Email Exchange at 1, Ex. 23 to Resp. Clark County MSJ, ECF No. 43-24).  Although

3   Gypsum submitted an amended Concept Plan in 2016 ("2016 Concept Plan"), (2016 Concept

4   Plan, Ex. R to Clark County MSJ, ECF No. 35-7), Clark County maintained that the 2016

5   Concept Plan was deficient because Clark County "records indicate that Gypsum did not pay an

6   application fee or submit a land use application when it submitted the Specific Plan and PFNA

7   to Clark County on September 28, 2011."[2] (Joel McCulloch Decl. ¶ 6, Ex. 25 to Resp. Clark

8   County MSJ, ECF No. 43-26).

9       **F.  The SRR Litigation**

10      The contention that the 2011 Concept Plan expired led to a legal dispute between Clark

11  County, Gypsum, and Save Red Rock ("SRR"), an organization dedicated to preserving Red

12  Rock. (*See generally* SRR Litigation Complaint, Ex. T to Clark County MSJ, ECF No. 35-6).

13  Clark County sued both Gypsum and SRR, seeking a declaration that the 2011 Concept Plan

14  had not expired. (Mr. Jones & Rich Schneider Email at 3, Ex. 39 to Resp. Clark County MSJ,

15  ECF No. 43-40).  SRR in turn countersued Clark County on this issue, in addition to bringing a

16  claim alleging that Clark County violated Nevada's Opening Meetings Laws. (*Id.*, Ex. 39 to

17  Resp. Clark County MSJ).  Commissioner Marilyn Kirkpatrick ("Commissioner Kirkpatrick")

18  and Commissioner Sisolak testified they were unaware that Clark County would bring suit

19  against Gypsum. (Commissioner Kirkpatrick Dep. 59:11–24, Ex. 5 to Resp. Clark County

20  MSJ); (Commissioner Sisolak Dep. 88:23–89:6, Ex. 19 to Resp. Clark County MSJ).

21  Moreover, Commissioner Kirkpatrick and Director Amundsen acknowledged that it was

22  unusual for Clark County to sue a landowner for a judicial determination regarding a pending

23  application. (Commissioner Kirkpatrick Dep. 63:24–64:3, Ex. 5 to Resp. Clark County MSJ);

24  —————————————

25  [2] Clark County would later concede that it lost these files, and that Gypsum had in fact paid the application fee and submitted a land use application. (Joel McCulloch Dep. 189:13–190:12, Ex. 9 to Resp. Clark County MSJ, ECF No. 43-10).

(Director Amundsen Dep. 111:25–112:18, Ex. 10 to Resp. Clark County MSJ).

As to the inclusion of SRR in this lawsuit, Commissioner Chris Ciunchigliani ("Commissioner Ciunchigliani") sent an email to Justin Jones,[3] SRR's pro bono counsel, explained that "[n]aming SRR and not making them go to the trouble of intervening to get status is the easiest way to get them legal standing to make . . . legal arguments[.]" (Commissioner Ciunchigliani Email at 2, Ex. 36 to Resp. Clark County MSJ, ECF No. 43-37). On December 30, 2016, Clark County moved for summary judgment in the SRR litigation, (*see generally* SRR MSJ, Ex. U to Clark County MSJ, ECF No. 35-6), but its motion was ultimately denied. (Order, Ex. V to Clark County MSJ, ECF No. 35-6).  Mr. Jones later represented in an email that "[i]f the case goes to trial, it will likely be uncomfortable for [C]ommissioner Sisolak, [C]ommissioner Brager, and County staff." (Mr. Jones & Rich Schneider Email at 3, Ex. 39 to Clark County Resp.).

### G. Gypsum's Waiver Application & the 2018 Nevada Gubernatorial and CCBC Elections

In June 2017, Gypsum requested a waiver regarding its access to State Route 159 and the timing of the BLM right-of-way approval condition. (*See generally* Gypsum 2017 Waiver Application, Ex. 39 to Resp. Clark County MSJ, ECF No. 43-40).  As stated above, Gypsum had to obtain the BLM right-of-way before its Specific Plan and PFNA could be approved. Gypsum requested a waiver requesting Clark County approve its Specific Plan and PFNA prior to obtaining the BLM right-of-way approval. (Gypsum 2017 Waiver Application at 5, Ex. 39 to Resp. Clark County MSJ).  On October 18, 2018, Gypsum filed a Letter of Justification repeating its request for modification of these conditions. (Letter of Justification at 2, Ex. CC to

---

[3] Justin Jones would later replace Commissioner Brager on the CCBC.  This Order refers to Justin Jones as "Mr. Jones" refer to his actions before he become a commissioner and "Commissioner Jones" to refer to his actions after became a commissioner.

1  Clark County MSJ, ECF No. 35-6).  The initial hearing for Gypsum's waiver application was
2  set for December 5, 2018. (*See generally* 12/05/2018 Agenda Sheet, Ex. DD to Clark County
3  MSJ, ECF No. 35-6).

4  Before October 2018, Commissioner Sisolak declared that he was running for governor
5  of Nevada in the 2018 election.  Mr. Jones had also declared he was running to succeed
6  Commissioner Brager on the CCBC.  Gypsum maintains that Commissioner Brager
7  intentionally delayed its waiver application until December to protect Commissioner Sisolak
8  from any negative publicity surrounding approval of Gypsum's waiver. (Mr. Brown Dep.
9  107:22–119:11, Ex. 20 to Resp. Clark County MSJ).

10  In October 2018, Mr. Jones was in contact with Commissioner Sisolak and his staff
11  regarding Gypsum's waiver application.  In an email chain with Commissioner Sisolak's
12  campaign manager Jim Ferrence ("Mr. Ferrence"), Mr. Jones expressed that, in exchange for
13  Commissioner Sisolak expressing his support for maintaining the BLM right-of-way condition
14  and denying Gypsum's pending waiver request, he had "SRR's authorization to stipulate to
15  dismiss all claims in the [SRR litigation] each party to bear its own costs immediately[.]" (Mr.
16  Jones & Mr. Ferrence Email Exchange at 3, Ex. 38 to Resp. Clark County MSJ, ECF No. 43-
17  39).  Mr. Jones provided a potential public statement for Commissioner Sisolak to issue if he
18  agreed to these terms. (*Id.* at 2–3, Ex. 38 to Resp. Clark County MSJ).  Mr. Jones would later
19  forward this email directly to Commissioner Sisolak. (Mr. Jones & Commissioner Sisolak
20  Exchange at 1, Ex. 13 to Gypsum Partial MSJ, ECF No. 38-14).  Mr. Jones would later
21  acknowledge that he "suggested that if [Commissioner Sisolak] came out with a position
22  opposing the granting of waivers that were sought by [Gypsum], that he would garner more
23  support from those who supported Red Rock issues." (Commissioner Jones Dep. 169:10–14,
24  Ex. 46 to Clark County Resp., ECF No. 43-47).

25  On October 24, 2018, Commissioner Sisolak released a public announcement stating he

opposed Gypsum's waiver request and explaining that because two new commissioners were being elected in the upcoming election, he was reticent to participate in a "lame-duck vote on such an important matter." (Commissioner Sisolak Public Statement at 2, Ex. 43 to Resp. Clark County MSJ, ECF No. 43-44); (Conservation Blog at 2–3, Ex. 21 to Gypsum Partial MSJ, ECF No. 38-22). Over the next week, Commissioner Brager indicated to Gypsum's representatives that she would not support its waiver application. (Commissioner Brager Dep. 140:1–141:17, 146:1–147:25, Ex. GG to Clark County MSJ, ECF No. 35-7); (*see* Commissioner Brager & Mr. Brown Text at 1, Ex. 44 to Resp. Clark County MSJ, ECF No. 43-45) ("I've always said that I need at least 5 votes no less and right now between the lawsuit and how Rob feels my comfort is diminishing in bringing that forward . . . ."). Within three weeks of Commissioner Sisolak issuing his statement in opposition to Gypsum's waiver application, SRR stipulated to dismiss its counterclaims against Clark County and Gypsum in the SRR litigation with prejudice. (*See generally* SRR Litigation Stip. Dismiss, Ex. 22 to Gypsum Partial MSJ, ECF No. 44-23).

As stated, Gypsum's waiver application was placed on the CCBC's agenda for December 5, 2018. This hearing would occur one month after the 2018 election, in which Commissioner Sisolak was elected governor of Nevada, and Mr. Jones was elected to succeed Commissioner Brager on the CCBC. Clark County staff prepared a report in preparation for the meeting which recommended the commissioners grant Gypsum's waiver for the State Route 159 condition and request to modify the right-of-way approval. (*See generally* 12/05/2018 Agenda Sheet, Ex. DD to Clark County MSJ). On December 3, 2018, Gypsum requested the matter be rescheduled to January 23, 2019, to allow it and "Clark County to work in good faith to address questions, concerns and comments brought forward of late by Clark County Commissioners and Save Red Rock." (Gypsum's 12/03/2018 Hold Letter at 2, Ex. HH to Clark County MSJ, ECF No. 35-7).

Gypsum now asserts that the need for a continuance was a direct result of the purported

1   "corrupt bargain" between Commissioner Sisolak and Mr. Jones. (Gypsum Resp. Statement

2   Undisputed Facts ¶¶ 43–44).  Clark County staff prepared another report in preparation for the

3   rescheduled meeting, again recommending the CCBC Commissioners grant Gypsum's waiver

4   for the State Route 159 condition and request to modify the right-of-way approval. (*See*

5   *generally* 01/23/2019 CCBC Agenda Sheet, Ex. 29 to Resp. Clark County MSJ, ECF No. 43-

6   30); (*see also* Director Amudsen Dep. 137:6–138:4, Ex. 10 to Resp.).

7         **H. Gypsum's Request for 90-day Continuance and Jones Ethics Opinion**

8         On January 18, 2019, shortly before its waiver application would be heard by the CCBC,

9   Gypsum requested a ninety-day continuance to hold the matter from January 23, 2019, to April

10  17, 2019, because "additional time [was] needed to meet with the [BLM.]" (Gypsum Hold

11  Letter at 2, Ex. JJ to Clark County MSJ, ECF No. 35-7).  Shortly before Gypsum's request for

12  continuance, on January 16, 2019, a quorum of the Nevada Commission on Ethics held a

13  hearing regarding Commissioner Jones' responsibilities under "the disclosure and abstention

14  requirements of the Ethics Laws associated with his past long-term and substantial affiliation

15  with [SRR]" as it related to "an application brought by [Gypsum.]" (Ethics Opinion at 2, Ex. 45

16  to Resp. Clark County MSJ, ECF No. 43-45).  On January 22, 2019, the Commission issued an

17  opinion finding that Nevada ethics laws "d[id] not require [Commissioner] Jones to abstain"

18  from participating in Gypsum's Major Project application. (*Id.* at 8, Ex. 45 to Resp. Clark

19  County MSJ).  Commissioner Jones acknowledged that he would not have voted on Gypsum's

20  Major Project application before receiving this opinion. (Commissioner Jones Dep. 243:1–25,

21  Ex. 46 to Resp. Clark County MSJ).

22        **I.  Denial of Gypsum's Waiver Application**

23        Clark County staff had previously issued two reports in December 2018 and January

24  2019 recommending that both of Gypsum's requested waivers be granted. (*See generally*

25  12/05/2018 Agenda Sheet, Ex. DD to Clark County MSJ); (01/23/2019 CCBC Agenda Sheet,

Ex. 29 to Resp. Clark County MSJ).  However, in preparation for the April 17, 2019, meeting, Clark County staff issued a new report, this time recommending that the CCBC deny Gypsum's waiver as to the BLM right-of-way approval. (*See generally* 04/17/2019 Agenda Sheet, Ex. MM to Clark County MSJ, ECF No. 35-7); (*see* Director Real Email at 2, Ex. 48 to Resp. Clark County MSJ, ECF No. 43-49) (stating that "[w]e will be going in and changing our recommendation to denial on the application(s)").

On April 17, 2019, the CCBC held a public meeting on Gypsum's waiver of the condition that no access shall be made on State Route 159, and the right-of-way from the BLM for primary access is required prior to approval of its Specific Plan and PFNA.  The CCBC unanimously denied "Gypsum's application to waive the requirement that it obtain the BLM grant prior to specific plan approval.  Clark County approved Gypsum's application to clarify that 'no access to Highway 159' condition applied only to primary access to and from State Route 159." (CCBC Agenda Item at 2, Ex. 50 to Resp. Clark County MSJ, ECF No. 43-50).

Gypsum subsequently brought the present action, alleging various federal and state claims emanating from Clark County's denial of Gypsum's waiver application concerning the BLM right-of-way grant and delay in processing its Major Project application.  Clark County later filed the instant Motion for Summary Judgment, (ECF No. 35), and Gypsum filed the Partial Motion for Summary Judgment, which the Court discusses below.[4]

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

---

[4] Following the initiation of this lawsuit, on August 4, 2021, the CCBC unanimously approved Gypsum's application for a non-Major Project residential development of the Gypsum Property in accordance with the applicable zoning requirements.  Because this was not a Major Project application, Gypsum's proposed development was approved without it having to obtain right-of-way approval from the BLM. (*See generally* August 4, 2021, Record and NOFA, Ex. QQ to Clark County MSJ, ECF No. 36-7).

1    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

2    may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

3    (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on

4    which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount

5    of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

6    judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

7    718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co*., 391 U.S. 253,

8    288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

9    inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

10   favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal

11   purpose of summary judgment is "to isolate and dispose of factually unsupported claims."

12   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

13          In determining summary judgment, a court applies a burden-shifting analysis.  "When

14   the party moving for summary judgment would bear the burden of proof at trial, it must come

15   forward with evidence which would entitle it to a directed verdict if the evidence went

16   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

17   the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

18   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and

19   quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving

20   the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

21   evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

22   that the nonmoving party failed to make a showing sufficient to establish an element essential

23   to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477

24   U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be

25   denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress*

1    *& Co.*, 398 U.S. 144, 159–60 (1970).

2        If the moving party satisfies its initial burden, the burden then shifts to the opposing

3    party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*

4    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

5    the opposing party need not establish a material issue of fact conclusively in its favor.  It is

6    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

7    parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

8    *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on

9    denials in the pleadings but must produce specific evidence, through affidavits or admissible

10   discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

11   1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical

12   doubt as to the material facts," *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)

13   (quoting *Matsushita*, 475 U.S. at 586).  "The mere existence of a scintilla of evidence in

14   support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other

15   words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory

16   allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th

17   Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

18   pleadings and set forth specific facts by producing competent evidence that shows a genuine

19   issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

20       At summary judgment, a court's function is not to weigh the evidence and determine the

21   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

22   The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

23   in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

24   not significantly probative, summary judgment may be granted. *See id.* at 249–50.

25       Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration

that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  To obtain relief under Rule 56(d), nonmovants must show "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

### III.   DISCUSSION

#### A. Gypsum's Evidentiary Objections

As an initial matter, Gypsum asserts a number of evidentiary objections to the exhibits attached to Clark County's Motion for Summary Judgment. (*See generally* Resp. Evidentiary Obj., ECF No. 44)  These objections can be divided into three general categories: objections based on (1) relevance; (2) authenticity; and (3) hearsay or calls for speculation. The Court addresses each of these categories in turn.

#### 1. Relevancy

Generally, most relevance-based evidentiary objections are moot in the context of summary judgment motions.  "This is because at summary judgment, the question is whether there are genuine disputes of *material* fact, and accordingly, the relevance inquiry inheres throughout the determination of summary judgment motions." *Relevant Group, LLC v. Nourmand*, No. 2:19-cv-05019, 2022 WL 2916860, at *2 (C.D. Cal. July 25, 2022) (emphasis in original) (citing *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("A court can award summary judgment only when there is no genuine dispute of material fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant.")); *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) ("[P]arties briefing summary judgment motions would be better served to 'simply argue' the import of the facts

1    reflected in the evidence rather than expending time and resources compiling laundry lists of

2    relevance objections.") (emphasis omitted).  Thus, Gypsum's relevance-based objections are

3    categorically misplaced.  Accordingly, Gypsum's relevance-based objections are

4    OVERRULED.[5]

5        **2.  Authentication**

6        As to Gypsum's authentication objections, when ruling on a motion for summary

7    judgment, the district court is limited to considering admissible evidence. *See Orr v. Bank of*

8    *Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted).  "At the time the Ninth

9    Circuit decided *Orr*," the case upon which Gypsum relies, "authentication was 'a condition

10   precedent to admissibility, and that condition was satisfied by evidence sufficient to support a

11   finding that the matter in question is what its proponent claims.'" *Benaron v. Simic*, No. 3:19-

12   cv-01653, 2021 WL 4464176, at *7 (D. Or. Sept. 29, 2021) (quoting *Orr*, 285 F.3d at 773)

13   (cleaned up).  The 2010 amendments to Fed. R. Civ. P. 56, however, "eliminate[d] th[is]

14   unequivocal requirement and mandate[d] only that the substance of the proffered evidence

15   would be admissible at trial." *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 922–23 (D. Nev. 2019)

16   (citing Fed. R. Civ. P. 56); *see also Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893,

17   915 (S.D. Cal. June 16, 2021) ("[T]he Court will consider the substance of evidence that would

18   be admissible at trial even if the form of the evidence is improper so long as that same evidence

19   may be admissible in another form.").

20

21

22   _____

23   [5] Similarly, Gypsum makes several evidentiary objections contending that Clark County's exhibits assume facts
     not in evidence, are speculative, or call for legal conclusions. (Resp. Evidentiary Obj. 2:21–23, 5:11–13).  But
     objections "to evidence on the ground that it is . . . speculative, and/or argumentative, or that it constitutes an

24   improper legal conclusion are all duplicative of the summary judgment standard itself' and [are] unnecessary to
     consider here." *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019)

25   (quotation omitted).  Accordingly, these objections are OVERRULED.

Gypsum's authentication objections can in turn be divided into three categories: (1) objections to deposition transcripts; (2) objections to the transcript of CCBC hearings; and (3) a blanket, or global objection, to nearly all of Clark County's exhibits summarily stating that these exhibits are "unauthenticated."

### a. Deposition Transcripts

Gypsum argues that the deposition transcripts proffered by Clark County are unauthenticated because they contain no executed court reporter certificate. (Resp. Evidentiary Obj. 2:17–26, 3:4–25, 4:7–10, 4:23–5:22).  The Ninth Circuit has stated that a "deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr*, 285 F.3d at 774.

Although the original deposition transcripts submitted by Clark County did not contain an executed court reporter certificate, Clark County remedied this omission by submitting the completed certification page with their Reply. (*See generally* Certification Requirement, Ex. A to Resp. Evidentiary Obj., ECF No. 49-1).  Accordingly, Clark County's deposition transcripts are authenticated. *See Carolina v. JPMorgan Chase Bank NA*, No. 19-cv-05882, 2021 WL 5396066, at *4 (D. Ariz. Nov. 17, 2021) (observing that defendants remedied failure to provide a deposition transcript with executed court reporter certificate by "submitting the completed certificate page with their reply").

### b. CCBC Meeting Transcripts

Gypsum further contends that the transcripts of CCBC meetings provided by Clark County are unauthenticated and were not provided in discovery.[6] (Resp. Evidentiary Obj. 3:1–

---

[6] Contrary to Gypsum's contention that these exhibits were not produced in discovery, Clark County identified and incorporated the transcripts in answers to discovery interrogatories with the precise internet address listed to access these documents. (*See* Clark County First Set of Interrogatories Resp. at 17:10–18:5, 19:10–20:11, 20:17–21:6, Ex. F to Clark County MSJ, ECF No. 35-4).

3, 4:23–26, 5:1–5).  Fed. R. Evid. 901 governs the authentication and identification of evidence. Rule 902 in turn relates to self-authenticating documents. Fed. R. Evid. 902.  "Federal courts consider records from government websites to be self-authenticating under Rule 902(5)." *Haines v. Home Depot U.S.A, Inc.*, No. 1:10-cv-01763, 2012 WL 1143648, at *8 (E.D. Cal. Apr. 4, 2012).

Here, the exhibits Clark County puts forth—transcripts from CCBC meetings available on the CCBC's website—are all amenable to self-authentication. *See United States v. Venture One Mortgage Corp.*, No. 13-cv-1872, 2016 WL 4768875, at *3 (S.D. Cal. June 10, 2016) ("Records from government websites fall within the ambit of Rule 902(5).").  The genuineness of these exhibits is sufficiently evidenced by the declaration of Lynn Marie Goya, the Clerk of Clark County, who is responsible "for supervising the verbatim transcripts of the video and audio recordings" of CCBC meetings. (*See generally* Lynn Marie Goya Decl., Ex. B to Reply Clark County MSJ, ECF No. 49-1); *see* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").  Therefore, these exhibits may be considered self-authenticating under Fed. R. Evid. 902(5).  Accordingly, Gypsum's objection is OVERRULED.

### c. Blanket Objection

In addition to the objections examined above, Gypsum makes a blanket authentication objection to nearly all of Clark County's exhibits. (*See generally* Resp. Evidentiary Obj.).  As previously stated, "the [C]ourt will consider the substance of evidence that would be admissible [at] trial even if the form of the evidence is improper so long as the same evidence may be admissible in another form." *Camarillo v. Balboa Thrift and Loan Ass'n*, No. 3:20-cv-00913, 2021 WL 409726, at *15 (S.D. Cal. Feb. 4, 2021); *see Romero v. Nev. Dep't of Corr.*, 673 F.

1   App'x 641, 644 (9th Cir. 2016) ("Rule 56 was amended in 2010 to eliminate the unequivocal
2   requirement that evidence submitted at summary judgment must be authenticated.").
3          Having reviewed Clark County's exhibits, the Court is satisfied that they could be
4   presented in admissible form at trial.  Indeed, Gypsum does not argue the substance of any of
5   these exhibits would be inadmissible at trial, but instead summarily contends they are
6   unauthenticated. *See JE Dunn Construction Company v. Owell Precast LLC*, No. 4:20-cv-
7   00158, 2020 WL 4455113, at *4 (D. Idaho Aug. 3, 2020) (denying defendant's objection where
8   substance of proffered exhibits were admissible, and defendant did not argue that exhibit was
9   "something other than what it purports to be" but "solely focus[ed] on the way the contract has
10  been entered into the record"); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material
11  cited to support or dispute a fact cannot be presented in a form that would be admissible in
12  evidence.") (emphasis added).  Accordingly, the Court will not, as Gypsum requests, disregard
13  all of Clark County's exhibits for lack of proper authentication because their substance could be
14  admissible at trial. *Dinkins*, 362 F. Supp. 3d at 923.

### 3.  Hearsay

16         Gypsum raises two hearsay objections to Exhibits F and AA attached to Clark County's
17  Motion for Summary Judgment. (Resp. Evidentiary Obj. 2:21–23, 5:11–13).  Exhibit F is Clark
18  County's Responses to Gypsum's First Set of Interrogatories. (*See generally* Clark County First
19  Set of Interrogatories Resp., Ex. F to Clark County MSJ).  Exhibit AA is an excerpt of Robert
20  Gronauer's Deposition. (*See generally* Robert Gronauer Dep., Ex. AA to Clark County MSJ,
21  ECF No. 35-6).  Gypsum objects to both exhibits in their entirety.
22         Gypsum's argument lacks any specificity, instead asserting that these exhibits contain
23  "hearsay." (Resp. Evidentiary Obj. 2:21–23, 5:11–13).  "Objections based on hearsay are
24  particularly context-specific, and 'the Court is not inclined to comb through these documents,
25  identify potential hearsay, and determine if any exception applies—all without guidance from

the parties.'" *De Contreras v. City of Rialto*, 894 F. Supp. 2d 1238, 1245 (C.D. Cal. Sept. 2012) (quoting *Clearman v. Fernando*, No. 05-cv-05633, 2010 WL 31901, at *4 (C.D. Cal. Jan. 31, 2010)), aff'd, 471 Fed. App'x 586 (9th Cir. 2012).  Accordingly, Gypsum's objections are inadequate in form and substance, and are therefore OVERRULED.

The Court will now address the merits of Clark County's Motion for Summary Judgment.

**B.  Clark County's Motion for Summary Judgment**

Gypsum's Amended Complaint asserts the following claims: (1) violation of its rights under the Fifth Amendment's Takings Clause; (2) violation of its Procedural and Substantive Due Process rights under the Fourteenth Amendment; (3) violation of its rights under the Equal Protection Clause of the Fourteenth Amendment; (4) *Monell* liability pursuant to 42 U.S.C. § 1983; (5) a separate, or stand-alone, claim for 42 U.S.C. § 1983 liability;[7] (6) violation of its Due Process Rights under the Nevada Constitution; (7) violation of its rights under the Nevada Constitution's Taking Clause; (8) violation of the Nevada Constitution's; (9) a pre-condemnation claim; (10) breach of contract; (11) breach of the implied covenant of good faith

---

[7] 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted); *see also Fontana v. Alpine Cnty.*, 750 F. Supp. 2d 1148, 1155 (E.D. Cal. 2010) (explaining that "§ 1983 is a method for vindicating rights elsewhere conferred").  Here, it appears that Gypsum is utilizing the stand-alone § 1983 claim as a catch-all for all its federal claims. (*See generally* Am. Compl.).  Put differently, Gypsum asserted a single stand-alone § 1983 to represent that it seeks § 1983 damages for all of Clark County's alleged constitutional violations.  To the extent Gypsum's stand-alone § 1983 claim was meant to be read in conjunction with its other federal causes of action it may proceed.  The Court notes, however, that Gypsum may only pursue § 1983 liability once for each federal cause of action.  Gypsum's stand-alone § 1983 claim would be duplicative if it brought a denial of equal protection under the Fourteenth Amendment pursuant to § 1983, and separately alleged a stand-alone § 1983 to vindicate the same right. *See Rodriguez v. City of Clement*, No. 5:08-cv-204, 2009 WL 395737, at *5 (M.D. Fla. Feb. 19, 2009) (dismissing as duplicative one of the plaintiff's two claims under § 1983 for an equal protection violation); *see also Miranda v. South Cnty. Central Sch. Dist.*, 461 F. Supp. 3d 17, 27 (E.D.N.Y. 2020) (same); *Mintz v. Upper Mount Bethel Tp.*, No. 12-cv-6719, at *2 (E.D. Pa. June 20, 2013) (same).  Therefore, Gypsum's § 1983 claim is permissible so long as it is read in conjunction with the other alleged federal constitutional violations as the sole remedy for said violations. *See Bennet v. City of Kingman*, 543 F. Supp. 3d 794, 805 (D. Ariz. 2021) (recasting the plaintiffs' stand-alone § 1983 claim as a "single cause of action" with the other federal constitutional violations pled).

and fair dealing; (12) a petition for a writ of mandamus; and (13) injunctive relief. (*See generally* Am. Compl., ECF No. 9).

Clark County now moves for summary judgment on all claims. The court will first evaluate the federal causes of action before turning to the state causes of action.

### 1. Federal Claims - Takings Clause

In the Ninth Circuit, courts "use a two-step analysis to determine whether a constitutional 'taking' has occurred." *Bowers v. Whitman*, 671 F.3d 905, 912 (9th Cir. 2012). The Court must first "determine whether the subject matter is 'property' within the meaning of the Fifth Amendment," and then "whether there has been a taking of that property, for which compensation is due." *Id.* The Court first examines whether Gypsum has a cognizable property interest.

For Takings Clause purposes, property interests "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quoting *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). To be cognizable under the Takings Clause, a constitutionally protected property right must be vested. *Id.* (citing *United States v. Sioux Nation*, 448 U.S. 371 (1980); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980)). "To determine whether a property interest has vested for Takings Clause purposes, the relevant inquiry is the certainty of one's expectation in the property interest at issue." *Id.* at 913 (internal quotation marks omitted). Here, two alleged property interests could form the basis of Gypsum's Takings Clause claim: (1) the express terms of the Settlement Agreement, or (2) Gypsum's alleged detrimental reliance on the Settlement Agreement.

#### a. Settlement Agreement

According to Clark County, the Settlement Agreement does not constitute a protected property interest because it maintained full discretion to accept or deny Gypsum's Major

1    Protect Application. (Clark County MSJ 11:16–16:3).  Gypsum maintains that the Settlement

2    Agreement created a vested property interest, guaranteeing it both a fair process in the review

3    of its Major Project application and some measure of increased density. (Resp. Clark County

4    MSJ 5:22–8:10).

5        "[I]t has long been settled that a contract can create a constitutionally protected property

6    interest." *San Bernardino Physicians' Servs. Med. Group, Inc. v. San Bernardino Cnty.*, 825

7    F.2d 1404, 1407–08 (9th Cir. 1987).  But "not every contract with a governmental entity

8    creates" a protected property interest. *Oceanside Golf Inst., Inc. v. City of Oceanside*, 876 F.2d

9    897, 897 (9th Cir. 1989).  As posited by the Second Circuit, the operative question then

10    becomes: "[W]hat is necessary to elevate a mere contract right to the level of a protectable

11    entitlement[?]" *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of

12    Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994).

13        Here, Gypsum's expectation is derived from the express terms of the Settlement

14    Agreement. (Resp. Clark County MSJ 5:23–8:10, ECF No. 43).  Thus, to determine whether

15    Gypsum has a constitutionally protected property interest, the Court must look to the terms of

16    the Settlement Agreement governing the process of its Major Project application(s). *Cf. Clukey

17    v. Town of Camden*, 717 F.3d 52, 57–59 (1st Cir. 2013) (finding a protected property interest

18    where the CBA between defendant municipality and the plaintiff's union stated that laid-off

19    employees had a right to be recalled to their former positions within a year of being laid off).

20    The operative provision of the Settlement Agreement Gypsum relies on states:

21        The County agrees that it will process the Major Project Application under the
         Major Projects in good faith. Gypsum understands that the County, by this
22        Agreement, cannot and is not committing to approval of any particular Major
         Project and/or any particular densities or uses.
23

24    (Settlement Agreement 6:22–26, Ex. D to Clark County MSJ).  Although written as a

25    single provision, the paragraph above contains two separate and distinct conditions.  The

1   first provides that Gypsum will receive a "good faith" or fair process.  The second asserts

2   that Clark County maintains full discretion to approve or deny Gypsum's Major Project

3   Application.  Here, neither sentence provides Gypsum with a vested property interest.

4       As to the first condition, at its core, Gypsum argues that it has a protected property

5   interest in the process by which Clark County reviews its Major Project Application.  In effect,

6   Gypsum claims a vested property interest in the means by which its Major Project Application

7   is considered, rather than the end result concerning whether it is approved.  Thus, Gypsum's

8   claimed entitlement for a "fair process" is no more than a claimed entitlement to process itself.

9   But "'[p]roperty cannot be defined by the procedures provided for its deprivation any more

10   than can life or liberty." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

11   Indeed, "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive

12   interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461

13   U.S. 238, 250 (1983).

14       Detailed and extensive procedure cannot constitute a property interest.[8] *See, e.g.*, *Shanks*

15   *v. Dressel*, 540 F.3d 1082, 1092 (9th Cir. 2008) ("Absent a substantive property interest in the

16   outcome of the procedure, Logan Neighborhood is not constitutionally entitled to insist on

17   compliance with the procedure itself."); *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074,

18   1085 (10th Cir. 2006) ("However, it is well established that 'an entitlement to nothing but

19   procedure' cannot be 'the basis of a property interest.'") (quoting *Town of Castle Rock, Colo v.*

20   *Gonzalez*, 545 U.S. 748, 749 (2005)); *Richardson v. Twp. of Brady*, 218 F.3d 508, 517–18 (6th

21   Cir. 2000) (holding that a plaintiff "can have no protected property interest in the procedure

22   itself"); *Swartz v. Scruton*, 964 F.2d 607, 610 (7th Cir. 1992) ("Thus, Swartz's asserted

23   legitimate claim of entitlement to process—the 'method'—by which his merit pay increase is

24

25

---

[8] For the same reason, Gypsum has no protectable property interest to a "good faith" process under Nevada Revised Statutes ("NRS") § 278A.520(2).

1    determined is not a constitutionally protected property interest.").

2          As to the second provision, it specifically provides that the "County, by this Agreement,

3    cannot and is not committing to approval of any particular Major Project and/or a particular

4    densities or uses." (Settlement Agreement 6:22–26, Ex. D to Clark County MSJ).  Thus,

5    Gypsum remained "'subject to the inherently unpredictable and often politicized process of

6    seeking permission form a local legislative body to conduct certain activity on a piece of

7    property.'" *Bennett v. City of Kingman*, 543 F. Supp. 794, 807 (D. Ariz. 2021) (quotation

8    omitted).  "Because the government's land zoning officials retain discretion to grant or deny an

9    application for rezoning, [Gypsum] has no protected entitlement to, and thus no property

10   interest in, a change in zoning or the process to obtain a desired change in zoning." *Gypsum*

11   *Res., LLC v. Guinn*, No. 2:05-cv-0583, 2008 WL 872835, at *5 (D. Nev. Mar. 27, 2008); *see*

12   *also Nunez v. City of Los Angeles*, 147 F.3d 867, 873 n.8 (9th Cir. 1988) (finding that state law

13   created constitutionally protected property interest where decision maker's discretion

14   significantly limited).  Therefore, Gypsum's "right," pursuant to the Settlement Agreement, is

15   not the kind of right to which a property interest may attach, regardless of the expense these

16   proceedings may entail or the consequences of a negative outcome.  Accordingly, Gypsum has

17   not identified a viable property interest created by the Settlement Agreement.

18                      b.  *Detrimental Reliance*

19         Next, Gypsum's claim that the Settlement Agreement "constitute[s] a bargained-for and

20   protectable interest" could be construed as raising a detrimental reliance argument. (Resp.

21   Clark County MSJ 6:23–25).  A property interest in zoning permit or variance is analogous to a

22   right to a particular land use. *Bennett*, 543 F. Supp. 3d at 807.  An interest in a particular land

23   use may constitute a protected property interest if it "has vested in equity based on principles of

24   detrimental reliance." *Bowers*, 671 F.3d at 915–16.  "[T]he gravamen of a 'vested rights' claim

25   is that the landowner has a right to a particular use of his land because he has relied to his

1   detriment on a formal government promise (in the form of a permit) stating that he can develop

2   that use." *Lakeview Dev. Corp. v. City of S. Lake Tahoe*, 915 F.2d 1290, 1295 (9th Cir. 1990).

3          The issue with Gypsum's argument is that the express terms of the Settlement

4   Agreement neither authorized nor guaranteed the approval of its Major Project Application.

5   Gypsum's argument conflates consideration with approval.  Gypsum cannot claim it has a

6   vested right to approval of its a Major Project Application *See Benno v. Shasta Cnty., Cal.*, No.

7   2:16-cv-01110, 2021 WL 3912187, at *10 (E.D. Cal. Sept. 1, 2021); *Acad. of Our Lady of*

8   *Peace v. City of San Diego*, No. 09-cv-962, 2012 WL 13175857, at *7 (S.D. Cal. May 11,

9   2012) ("Here it is undisputed that Plaintiff could not modernize its campus without first

10  obtaining the necessary permits, and it has never been free to 'use its own property' however it

11  wished.  It is also undisputed that the permits at issue here are issued upon the City's

12  discretion."); *Koloa Marketplace, LLC v. Cnty. of Kauai*, No. 06-cv-00570, 2007 WL 2247797,

13  at *18 (D. Haw. July 31, 2007) ("A developer cannot claim a vested property right unless and

14  until the permitting agency has engaged in final discretionary action granting the permit.").

15  Therefore, Gypsum has not identified a viable protected property interest sufficient to state a

16  Takings Clause claim.  Accordingly, the Court GRANTS summary judgment in favor of Clark

17  County on Gypsum's Takings Clause claim.

18          **1.   Due Process**

19          "Due [P]rocess claims, like Takings Clause claims, require a 'showing of a liberty or

20  property interest protected by the Constitution." *Sierra Med. Servs. Alliance v. Kent*, 883 F.3d

21  1216, 1226 (9th Cir. 2018) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56,

22  62 (9th Cir. 1994)).  Here, Gypsum "lacks a cognizable liberty or property interest under the

23  [Fifth and] Fourteenth Amendment[s], rendering it unable to pursue its substantive due process

24  claim and its procedural due process challenge." *Prime Healthcare Servs., Inc. v. Harris*, 216 F.

25  Supp. 3d 1096, 1109 n.14 (S.D. Cal. 2016); *see also Evans v. Cnty. of Trinity*, No. 2:18-cv-

00083, 2021 WL 516796, at *4 (E.D. Cal. Feb. 11, 2021) ("To establish a procedural or substantive due process claim, a plaintiff must first show 'a liberty or property interest protected by the Constitution.'") (quoting *Wedges/Ledges*, 24 F.3d at 62).  Accordingly, the Court GRANTS Clark County's Motion for Summary Judgment is as to Gypsum's Procedural and Substantive Due Process claims under the United States Constitution.[9]

### 2.  Equal Protection Class-of-One

The Court will next address Gypsum's claim that Clark County erected arbitrary distinctions to stymie its Major Project Application in violation of the Equal Protection Clause of the Fourteenth Amendment.  Unlike Gypsum's previous federal claims, Gypsums Equal Protection claim does not "require a constitutionally protected property interest." *Hermosa on Metropole, LLC v. City of Avalon*, 659 F. App'x 409, 411 (9th Cir. 2016).  Here, Gypsum's Equal Protection claim proceeds under a class-of-one theory.

As the Supreme Court has recognized, "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).  To plead a class-of-one equal protection claim, plaintiffs must allege facts showing that they have been "[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment."[10] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

Clark County argues that Gypsum's "class-of-one" claim fails because Gypsum cannot

---

[9] The Court's Order denying in part Gypsum's Motion for Partial Summary Judgment only addressed Gypsum's Procedural Due Process claim, deferring on addressing Gypsum's Substantive Due Process claim. (Order 7:22–12:15, ECF No. 95).  Based on the above, the Court now DENIES Gypsum's Motion for Partial Summary Judgment as to its Substantive Due Process claim.

[10] "[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Because Gypsum does not allege that Clark County discriminated against a suspect class, rational basis review applies. *See Hood Canal Sand and Gravel, LLC v. Brady*, 129 F. Supp. 3d 1118, 1126 (W.D. Wash.

show there is a similarly situated comparator that was treated differently. (Clark County MSJ 26:21–31:19); (Reply Clark County MSJ 21:25–22:12).  In response, Gypsum claims that evidence of a similarly situated comparator is not always necessary to state an equal protection class-of-one claim. (Resp. Clark County MSJ 16:22–17:18).

In *SmileDirectClub, LLC v. Tippins*, the Ninth Circuit determined the degree of similarity that makes a plaintiff "similarly situated" to others in the class-of-one context. 31 F.4th 1100, 1123 (9th Cir. 2022).  The Ninth Circuit held that "a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *Id*.  Relying on *SmileDirectClub*, Clark County contends that a class-of-one-plaintiff is required to establish the presence of a proposed comparator they are similar to in all material respects in order to state a viable disparate treatment claim. (Reply Clark County MSJ 16:22–17:18).

In response, Gypsum posits a similarly situated comparator is only one method by which a class-of-one claim may be proven.  Gypsum relies on the Ninth Circuit's decision in *Ballou v. McElvain*, a gender-based employment discrimination case, in which the Ninth Circuit explained that "a relevant comparator is not an element of a disparate treatment claim," and the "existence of a comparator 'is only one way to survive summary judgment on a disparate treatment claim.'" 29 F.4th 413, 424 (9th Cir. 2022) (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013)).  "With or without comparator evidence, courts determine whether a government action was motivated by discriminatory purpose by engaging in the 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Id*. (quoting *De La Cruz v. Tormey*, 582 F.2d 45, 59 (9th Cir. 1978)).

In other words, Gypsum maintains a class-of-one claim can be demonstrated through direct and circumstantial evidence illustrating an improper motive, even if there is no similarly

2015).

situated comparator. *Ballou*, 29 F.4th at 424.  Thus, although these methods to establish disparate treatment are distinct, both present viable ways to advance a class-of-one claim. *Id.*; *see Awabdy v. City of Adelanto*, 368 F.3d 1062, 1071 (9th Cir. 2004) ("[I]n order to prevail under § 1983 on his Fourteenth Amendment claim against the particular defendants involved, [the plaintiff] need only prove that they purposefully caused the state to institute proceedings against him because of his race or ethnicity, and not . . . that similarly situated members of other, usually majority, groups were treated differently.").  Ultimately, it is the circumstances surrounding the class-of-one claim which determine if a similarly situated comparator is needed to set forth a viable claim.[11]

Here, Gypsum's reliance on *Ballou* is misplaced.  *Ballou* involved the shifting burden of proof in a case of gender-based employment discrimination; it did not involve an Equal Protection class-of-one claim.  Gypsum points to no Ninth Circuit decision suggesting that an Equal Protection class-of-one claim can survive without a "similarly situated" comparator.  Nor has this Court found any.  To the contrary, the Ninth Circuit's recent decision in *SmileDirectClub* indicates that a class-of-one plaintiff must, to survive summary judgment, produce evidence of a "similarly situated" comparator.  Therefore, the Ninth Circuit's holdings in *Ballou* and *SmileDirectClub* are not irreconcilable.  Rather, they address distinct separate and distinct claims brought under the Equal Protection Clause.

It is true that the protections of the Fourteenth Amendment are written as a "fundamental guarantee of 'equal protections of the laws'" for all. *Ballou*, 29 F.4th at 425 (quoting U.S.

---

[11] The United States Court of Appeals for the Seventh Circuit's decision in *Brunson v. Murray* is instructive. 843 F.3d 698 (7th Cir. 2016).  In *Brunson*, the Seventh Circuit explained that "[e]vidence of similarly situated individuals is not required as part of a formalistic mandate," but may help establish disparate treatment in certain cases "if all principal characteristics of the two individuals are the same, and one received more favorable treatment." *Id.* at 706 (quoting *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013).  In contrast, other cases present circumstances "where disparate treatment 'is easily demonstrated but similarly situated individuals are difficult to find.'" *Id.*

1    Const. amend. XIV, § 1).  But in the absence of Supreme Court or Ninth Circuit precedent

2    holding that plaintiffs do not need to show a comparator similar to themselves in all material

3    respects in the land use and land permit context, the Court will apply the same standard in

4    determining disparate treatment as set forth in *SmileDirectClub*. *See Engquist*, 553 U.S. at 601

5    (noting that class-of-one theory is "not so much a departure from" as it is "an application of"

6    traditional equal protection principles).  Here, Gypsum has not shown how a specific

7    comparator, similarly situated to it in all material respects, was treated differently.  Instead, it

8    generally contends that Clark County deviated from its historical Major Project application

9    process.  This is insufficient to show a to demonstrate the "demanding 'similarly situated'

10   requirement articulated in *SmileDirectClub*." *Evans Creek, LLC v. City of Reno*, No. 21-cv-

11   16620, 2022 WL 14955145, at *2 (9th Cir. Oct. 26, 2022).  Accordingly, the Court GRANTS

12   Clark County's Motion for Summary Judgment as to Gypsum's Equal Protection class-of-one

13   claim under the United States Constitution.

14       **3.  *Monell* Liability**

15   Here, Gypsum has not established a constitutional right of which it was deprived.

16   Therefore, it cannot make out a claim against Clark County. *See City of Canton v. Harris*, 489

17   U.S. 378, 388 (1989) ("[A] municipality can be liable under § 1983 only where its policies are

18   the 'moving force [behind] the constitutional violation.'") (alteration in original); *see also*

19   *Benas v. Baca*, 19 F. App'x 762, 768 (9th Cir. 2005) ("[A]s the district court correctly

20   concluded, [*Monell*] liability may not be imposed absent an underlying violation of the

21   plaintiff's rights that is related to an official policy or custom in question.").  Accordingly,

22   Clark County is GRANTED summary judgment as to Gypsum's *Monell* claim.

23       In sum, Clark County is entitled to summary judgment on each of Gypsum's federal

24   claims.  These claims formed the basis of the Court's subject-matter jurisdiction. (*See generally*

25   FAC); *see also* 28 U.S.C. § 1331, 1343.  Because Clark County is entitled to summary

judgment on Gypsum's federal claims, the Court must now determine whether it will continue to exercise supplemental jurisdiction over Gypsum's remaining state-law claims.

### 4.  State-Law Claims

A district court has discretion to decline exercising supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  "The Supreme Court has instructed that the exercise of supplemental jurisdiction should be rare when"—as here—"all federal claims have been dismissed before trial." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (O'Scannlain, J., dissenting) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27 (1966)).  When exercising its discretion, the Court considers the interest in "economy, convenience, fairness, and comity." *Acri*, 114 F.3d at 1001.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Having considered the applicable factors, the Court concludes it will not exercise supplemental jurisdiction over Gypsum's remaining state-law claims. *See Van Dusen v. City of Oakland*, 678 F. App'x 582, 584 (9th Cir. 2017) (holding a district court acted within its discretion to exercise supplemental jurisdiction over pendent state-law claims after dismissing all federal claims).  "Specifically, comity concerns weigh heavily against exercising supplemental jurisdiction." *Bennett*, 543 F. Supp. at 812–13.  The Ninth Circuit recognizes that land use planning is a "'sensitive area of social policy' that typically falls within the purview of the state." *Meritage Homes of Cal., Inc. v. City of La Verne*, 18-cv-929, 2018 WL 5928124, at *4 (C.D. Cal. Aug. 23, 2018) (quoting *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1095 (9th Cir. 1976)).  Land use planning, and decisions related to planning, predominate throughout Gypsum's state-law claims.  Additionally, Gypsum's claim for writ of mandamus pursuant to NRS § 34.160, is exclusively a state procedural remedy that involves

complex issues of state law.[12] *See Indep. Living Ctr. of S. California, Inc. v. Kent*, 909 F.3d 272, 287 (9th Cir. 2018) (Christen, J., concurring) ("District courts in our circuit have concluded that 'federal courts are without power to issue writs of mandamus to direct state agencies in the performance of their duties.'"); *Clemens v. Del Norte Cty. Unified Sch. Dist.*, 843 F. Supp. 583, 596 ("Mandamus proceedings to compel a state administrative agency to act are actions that are uniquely in the interest and domain of state courts. It would be entirely inappropriate for a federal court, through exercise of its supplemental jurisdiction, to impose itself upon such proceedings. Considerations of federalism and comity, not generally present with typical 'pendent' state claims, loom large in the case of state mandamus proceedings."). Therefore, the Court declines to exercise supplemental jurisdiction.  Gypsum's state-law claims will be dismissed without prejudice.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED** that Clark Count's Motion for Summary Judgment, (ECF No. 35), is **GRANTED.**

**IT IS FURTHER ORDERED** that Gypsum's Motion for Partial Summary Judgment, (ECF No. 38), is **DENIED.**

**IT IS FURTHER ORDERED** that Gypsum's Motion to Supplement its Opposition to Clark County's Motion for Summary Judgment and Statement of Undisputed Facts in Support

---

[12] Gypsum's Amended Complaint only brings a cause of action for a writ of mandamus pursuant to NRS § 34.160, (*see generally* Am. Compl.), and not the Federal Mandamus Act, 28 U.S.C § 1361.  Even if Gypsum had asserted a claim under the Federal Mandamus Act, however, this Court would not have jurisdiction to issue a writ of mandamus to compel the CCBC — a non-federal entity — to take the action requested by it.  The Federal Mandamus Act "provides district courts with mandamus power 'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361).  "The federal courts are without power to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties[.]" *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966); *see Fox v. City of Pasadena*, 78 F.2d 948, 950 (9th Cir. 1935) (concluding that a district has not jurisdiction to issue a writ of mandamus to transfer funds in a city's treasury from the general fund to the district fund).  The CCBC is neither an "officer or employee of the United States" nor an "agency thereof." 28 U.S.C. § 1361.  Accordingly, Gypsum's writ of mandamus claim would fail if brought under the Federal Mandamus Act.

1   of Gypsum's Partial Motion for Summary Judgment, (ECF No. 119), is **DENIED**.

2       **IT IS FURTHER ORDERED** that Clark County's Motion for Protective Order, (ECF

3   No. 115), is **DENIED as moot**.

4       **IT IS FURTHER ORDERED** that Clark County's Motion in Limine, (ECF No. 86), is

5   **DENIED as moot**.

6       **IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment

7   accordingly and close this case.

8       **DATED** this __26__ day of May, 2023.

9

10   _____

11   Gloria M. Navarro, District Judge
     UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25